COMMONWEALTH *vs.* JAMES DUNN.

No. 96-P-327.

Hampden. April 8, 1997. - June 26, 1997.

Present: PORADA, IRELAND, & GREENBERG, JJ.

*Home Invasion.: Due Process of Law,* Vagueness of statute. *Statute,* Construction. *Constitutional Law,* Cruel and unusual punishment. *Practice, Criminal,* Sentence.

General Laws c. 265, § 18C, is not unconstitutionally vague where the elements of the crime are set forth with reasonable clarity and provide adequate notice of the conduct that the Legislature wishes to proscribe. [59-62]

A defendant convicted of violation of G. L. c. 265, § 18C, did not demonstrate that the statute's mandatory minimum sentence of twenty years was so disproportionate to the crime that it "shocks the conscience and offends fundamental notions of human dignity" as would amount to cruel and unusual punishment. [62-65]

INDICTMENT found and returned in the Superior Court Department on June 3, 1994.

The case was tried before *Judd J. Carhart,* J.

*Warren M. Yanoff* for the defendant.

*James M. Wodarski,* Assistant District Attorney, for the Commonwealth.

IRELAND, J. The defendant was convicted by a Superior Court jury of the crime of home invasion, G. L. c. 265, § 18C, and received a sentence of from twenty-four to thirty years in State prison.[1] The defendant argues that G. L. c. 265, § 18C,

---

[1]In addition, the defendant received sentences of from five to six years in State prison on each of three guilty verdicts — two for assault with a dangerous weapon and one for illegal possession of a firearm. The five to six year sentences all run concurrently with the twenty-four to thirty year sentence. The defendant received an additional concurrent one year sentence to a house of correction for unlawfully possessing a firearm without a valid firearms identification card.

is unconstitutionally vague on its face. He also argues that the term of imprisonment under the statute (a minimum of twenty years up to life for a first offense) constitutes cruel and unusual punishment under State and Federal constitutional provisions. Both issues presented in the appeal involve a facial challenge to the home invasion statute; hence, for purposes of appellate review, the facts underlying the conviction are not relevant. See *Commonwealth* v. *Williams*, 395 Mass. 302, 303 n.1 (1985).

1. *Vagueness.* The well-settled principles for determining whether a criminal statute is unconstitutionally vague and, therefore, a violation of due process are stated in *Commonwealth* v. *Williams*, *supra* at 303-304. A criminal statute must be "sufficiently clear to give notice of the prohibited conduct." *Id.* at 304, citing *Commonwealth* v. *Bohmer*, 374 Mass. 368, 371-372 (1978). The statute must "define the criminal offense with sufficient definiteness that ordinary people can understand what conduct is prohibited and in a manner that does not encourage arbitrary and discriminatory enforcement." *Id.* at 304, quoting from *Kolender* v. *Lawson*, 461 U.S. 352, 357 (1983). Proscribed conduct need not, however, be set forth by "precise legal definition" or with "mathematical precision." *Commonwealth* v. *Williams*, *supra* at 304. A person may fairly be required to conform his conduct "to an imprecise but comprehensible normative standard." *Ibid.*, quoting from *Commonwealth* v. *Orlando*, 371 Mass. 732, 734 (1977).

When examining a criminal statute for possible unconstitutional vagueness, we may go beyond the actual language of the statute to give meaning to the words and phrases according to their common law meaning or statutory history. See *Commonwealth* v. *Gallant*, 373 Mass. 577, 581 (1977). A criminal statute is to be construed strictly against the Commonwealth and in favor of the defendant. See *Commonwealth* v. *Lightfoot*, 391 Mass. 718, 720 (1984). But a statute need not be so strictly construed " 'as to defeat the obvious intention of the legislature' or 'to override common sense.' " LaFave & Scott, Substantive Criminal Law § 2.2(d), at 109 (1986), quoting from *Barrett* v. *United States*, 423 U.S. 212, 218 (1976), and *United States* v. *Moore*, 423 U.S. 122, 145 (1975).

Bearing these principles in mind, we examine the statute to

determine if it is impermissibly vague. General Laws c. 265, § 18C, inserted by St. 1993, c. 333, and approved with an emergency preamble, establishes the crime of home invasion. The statute, in pertinent part, reads as follows:

> "Whoever knowingly enters the dwelling place of another knowing or having reason to know that one or more persons are present within or knowingly enters the dwelling place of another and remains in such dwelling place knowing or having reason to know that one or more persons are present within while armed with a dangerous weapon, uses force or threatens the imminent use of force upon any person within such dwelling place whether or not injury occurs, or intentionally causes any injury to any person within such dwelling place shall be punished by imprisonment in the state prison for life or for any term of not less than twenty years."

From the language quoted, the defendant asserts a number of ambiguities which he claims could make criminal otherwise innocent conduct. First, he contends that the statute fails to distinguish a lawful from an unlawful entry. The term "enters" within the statute is given no special definition. Nonetheless, the word is to be construed as an unlawful entry, consistent with its use in a criminal context. See Black's Law Dictionary 533 (6th ed. 1990) ("In criminal law, entry is the unlawful making [of] one's way into a dwelling or other house, for the purpose of committing a crime therein"). See also *Commonwealth* v. *Ricardo*, 26 Mass. App. Ct. 345, 355 (1988) (for purposes of armed assault within a dwelling, G. L. c. 265, § 18A, entry must be "unprivileged" or unlawful). Indeed, the act's very caption — "An Act Establishing the Crime of Home Invasion" — bespeaks legislative intent that a consensual or privileged entry is not an "invasion."

Further, the word "enters" appears in related statutory contexts, including G. L. c. 265, § 18A, and G. L. c. 266, §§ 14-19 (pertaining generally to burglary and to breaking and entering). As here, the word contemplates the common law meaning of an unlawful, or nonconsensual, entry. Terms appearing within the same or related statutes are to be given the same meaning unless the Legislature intends a different meaning. See *Commonwealth* v. *Perry*, 6 Mass. App. Ct. 531, 535 (1978).

The defendant next points out that the statute's omission of a comma immediately before the phrase, "while armed with a dangerous weapon," means that that phrase could refer to the occupant of the dwelling and not to the perpetrator. We need not interpret a statute so as "to override common sense," LaFave, *supra* at 109, or reach an absurd result, even when faced with minor and insignificant flaws or oversights in draftsmanship. The simple insertion of a comma immediately before the phrase makes the meaning clear. Other criminal statutes include the same element or requirement as the home invasion statute that a perpetrator be "armed with a dangerous weapon." See G. L. c. 265, § 17 (armed robbery); G. L. c. 265, § 18 (assault with intent to rob or murder); G. L. c. 265, § 18A (armed assault in a dwelling); and G. L. c. 266, § 14 (armed burglary). See also *Commonwealth* v. *Perry, supra* at 535. The phrase "armed with a dangerous weapon" obviously refers to the perpetrator of the crime of home invasion and not to the potential victim.

The defendant seizes upon the statute's failure to state what constitutes "a dangerous weapon," or to specify whether the dangerous weapon is legally or illegally possessed, or even to make clear whether the force or threat of force must be occasioned by actual use of the dangerous weapon. Nowhere in the roundup of statutes we have already cited is "dangerous weapon" defined. Rather, its meaning is left largely to the fact finder to determine "the instrumentalities's potential for harm as it might . . . objectively seem[ ] to a reasonable individual." *Commonwealth* v. *Tarrant*, 367 Mass. 411, 414 (1975) (referring to dangerous weapon under the armed robbery statute, G. L. c. 265, § 17). What constitutes "a dangerous weapon" does not fluctuate with the particular statute in which that term appears. See *Commonwealth* v. *Shea*, 38 Mass. App. Ct. 7, 15-16 (1995). The failure to describe what is meant by a dangerous weapon does not render the statute vague.

Whether a "dangerous weapon" is illegally possessed or is used during the commission of the crime of home invasion to commit an assault or battery is irrelevant under the statute. When the Legislature has intended to criminalize the unlawful, versus lawful, possession of certain types of weapons, it has done so. See G. L. c. 269, § 10. And when the Legislature has intended to distinguish crimes that are

committed "by means of a dangerous weapon" from other crimes that are committed simply by "being armed with a dangerous weapon," whether or not the weapon is actually used, it has also done so. Compare G. L. c. 265, § 15A (assault and battery with a dangerous weapon), and G. L. c. 265, § 15B (assault with a dangerous weapon), with G. L. c. 265, §§ 17, 18, 18A, and G. L. c. 266, § 14. See, e.g., *Commonwealth* v. *Hawkins*, 21 Mass. App. Ct. 766, 768 (1986).

Finally, the defendant complains of the statute's lack of specificity as to the modicum of actual or threatened force that is required. According to the defendant, a mere offensive touching of the dwelling's occupant could suffice. We agree that serious bodily injury need not be inflicted or threatened in order to satisfy the element of force. That, however, does not render the statute invalid. As with robbery, "the degree of force is immaterial." *Commonwealth* v. *Jones*, 362 Mass. 83, 87 (1972). *Commonwealth* v. *Jones*, 12 Mass. App. Ct. 489, 491 (1981). The defendant who "threatens the imminent use of force," G. L. c. 265, § 18C, has committed criminal assault regardless of whether the dwelling's occupant was in fear or apprehension of harm, *Commonwealth* v. *Dixon*, 34 Mass. App. Ct. 653, 657 (1993), or whether the defendant actually intended to harm the occupant. *Commonwealth* v. *Matsos*, 421 Mass. 391, 395 (1995).

We conclude that G. L. c. 265, § 18C, is not unconstitutionally vague. The elements of the crime — most of which appear in substantially the same form elsewhere in related criminal statutes — are set forth with reasonable clarity and provide adequate notice of the conduct that the Legislature wishes to proscribe.

2. *Cruel and unusual punishment.* The defendant contends that the statute's mandatory minimum sentence of twenty years — compared to sentences that appear in other criminal statutes — is excessive and disproportionate, amounting to cruel and unusual punishment. We do not lightly second guess or upset the Legislature's independent determinations concerning particular conduct it wishes to criminalize and the sanctions it wishes to prescribe for that conduct to vindicate the community's legitimate interests in a secure, peaceable, and orderly society. See *Commonwealth* v. *Alvarez*, 413 Mass. 224, 233 (1992), and cases cited. A defendant, therefore, bears a heavy burden of showing that a particular punishment that

has been established by the Legislature exceeds the limitations of art. 26 of the Massachusetts Declaration of Rights or the Eighth Amendment to the United States Constitution, to reach the level of cruel and unusual punishment. *Ibid.* See *Commonwealth* v. *Marcus*, 16 Mass. App. Ct. 698, 699 (1983).

Specifically, a defendant must persuade a reviewing court that the punishment is "so disproportionate to the crime that it 'shocks the conscience and offends fundamental notions of human dignity.' " *Ibid.*, quoting from *In re Lynch*, 8 Cal. 3d 410, 424 (1972). When analyzing a claim that a punishment is disproportionate to the offense committed, we consider three factors: "(1) the nature of the offender and offence in light of the degree of harm to society; (2) sentencing provisions in other jurisdictions for similar offenses; and (3) sentences for more severe offenses within the Commonwealth." *Commonwealth* v. *Alvarez, supra* at 234, citing *Commonwealth* v. *Therriault*, 401 Mass. 237, 240 & n.1 (1987). In light of the Supreme Court decision in *Solem* v. *Helm*, 463 U.S. 277, 292 (1983), the Supreme Judicial Court noted that the disproportionality test adopted in *Commonwealth* v. *Jackson*, 369 Mass. 904, 910-913 (1976), "set[ ] forth the appropriate standard for reviewing . . . cruel and unusual punishment claim[s] under both State and Federal constitutional law." *Commonwealth* v. *Therriault, supra* at 240 n.3.[2] The defendant's claim comes up short on each of these factors.

We consider in particular the first factor concerning the nature of the offense of home invasion and the degree of harm to society that the statute seeks to prevent. The crime of home invasion is akin to that of armed burglary, G. L. c. 266, § 14, and armed assault within a dwelling, G. L. c. 265, § 18A. The latter two crimes presently carry sentences of from ten years to life. The Supreme Judicial Court has previously determined that a minimum sentence of ten years for armed burglary and a sentence to any term of years for armed assault within a dwelling are not cruel and unusual punishments for crimes the court described as "among the most

---

[2]At this juncture, we have no need to, nor do we, address the most recent Supreme Court decision, *Harmelin* v. *Michigan*, 501 U.S. 957 (1991), concerning the Federal constitutional proscription against cruel and unusual punishment.

serious . . . in our jurisprudence." *Commonwealth* v. *Morrow*, 363 Mass. 601, 611 (1973).[3]

What sets home invasion apart from the other two crimes — and we think legitimately triggers a longer minimum sentence — is the additional element that the armed intruder knows, or should know, that an occupant is present before he enters the dwelling. The intruder's actual or constructive knowledge on that score, we think, dramatically heightens the risk of a potentially deadly encounter with a frightened or startled occupant. Indeed, the unlawful entry into a dwelling, even absent knowledge that someone is present inside, "inevitably poses a high degree of danger to any and all occupants." *Commonwealth* v. *Claudio*, 418 Mass. 103, 109 (1994). Moreover, that risk is even greater considering that an occupant within his own dwelling has no duty to retreat in the face of deadly force before resorting to deadly force in self-defense. See G. L. c. 278, § 8A, inserted by St. 1981, c. 696.

The Legislature may establish disparate penalties for similar types of crimes where there is a legitimate objective served. *Commonwealth* v. *Brisson*, 31 Mass. App. Ct. 418, 423 (1991). Hence, the Legislature may exact a harsher price for criminal offenses with a higher degree of criminal culpability. The home invasion statute punishes more severely the armed intruder who invades another's dwelling while knowing that one or more individuals are present and then proceeds to assault those individuals.

Comparison of the punishment imposed by G. L. c. 265, § 18C, with the punishments imposed by similar statutes in other States leads to the conclusion that our statute's term of imprisonment is not grossly disproportionate. Michigan[4] and Florida,[5] the two States with statutes somewhat similar to G. L. c. 265, § 18C, impose prison sentences ranging from a maximum of twenty years in Michigan to a maximum of thirty years in Florida but do not impose minimum sentences.

---

[3]General Laws c. 265, § 18A, armed assault within a dwelling, was amended by St. 1969, c. 473, to establish the present ten year minimum sentence. Prior to that, the sentence was for any term of years up to life. The offenses charged in *Commonwealth* v. *Morrow* predated the 1969 amendment. Hence, the *Morrow* case does not explicitly pass on whether a ten year minimum sentence for committing armed assault within a dwelling is cruel and unusual punishment.

[4]Michigan Comp. Laws Ann. § 750.110a(2) (West 1991 & Supp. 1997).

[5]Florida Stat. Ann. §§ 775.082 and 812.135 (West 1993).

The Illinois home invasion statute[6] is substantially the same as G. L. c. 265, § 18C, and it imposes a minimum sentence of from six years to a maximum sentence of thirty years. These sentences — in particular the sentence imposed by Illinois — are not so disparate from the Commonwealth's sentence of from twenty years to life as to offend against any disproportionality principle for cruel or unusual punishment under art. 26 of the Massachusetts Declaration of Rights.[7]

Here, where there are only two States that have comparable statutes, the fact that one State imposed a more severe punishment does not indicate anything "more than different exercises of legislative judgment." By enacting G. L. c. 265, § 18C, the Legislature did not demonstrate "unrestrained" use of its power. *Commonwealth* v. *Jackson*, 369 Mass. 904, 914 (1976), quoting from *Weems* v. *United States*, 217 U.S. 349, 381 (1910). Cf. *Cepulonis* v. *Commonwealth*, 384 Mass. 495, 498 (1981), appeal dismissed, 455 U.S. 931 (1982) (upholding, though no other State had imposed as severe a sentence, a forty to fifty year sentence for possession of a machine gun). "The inherent nature of our Federal system . . . result[s] in a wide range of constitutional sentences." *Solem, supra* at 290-291 n.17.

We are hard-pressed to compare punishment under G. L. c. 265, § 18C, with punishments for "more serious offenses within the Commonwealth." *Commonwealth* v. *Alvarez*, 413 Mass. at 234. The "more appropriate comparison," in this case, is with punishments for similar offenses. See *ante* at 63-64; *Commonwealth* v. *Therrault*, 401 Mass. at 241. It suffices to say, however, that the crimes of manslaughter (in certain of its forms), G. L. c. 265, § 13; armed robbery, G. L. c. 265, § 22(*a*); and aggravated rape, G. L. c. 265, § 22(*a*), all carry sentences for any term of years up to and including life.

In sum, we conclude that G. L. c. 265, § 18C, is not unconstitutionally vague and does not impose cruel or unusual punishment for the crime of home invasion. The defendant's conviction under the statute is affirmed.

*So ordered.*

---

[6]Ill. Ann. Stat. c. 720, par. 5/12-11, and c. 730, par. 5/5-8-1 (Smith-Hurd 1993).

[7]Because the challenge fails under the State Constitution, it necessarily fails under the Federal Constitution.