## COMMONWEALTH *vs.* EUGENE P. FLEMING.

No. 96-P-1801.

Norfolk. October 16, 1998. - March 2, 1999.

Present: ARMSTRONG, KASS, & FLANNERY, JJ.[1]

*Armed Assault in a Dwelling. Practice, Criminal,* Instructions to jury.

At the trial of an indictment for armed assault in a dwelling, the judge erred in refusing to instruct the jury to consider whether the defendant had, or reasonably thought he had, permission or privilege to enter the premises in question; the defendant was entitled to a new trial. [395-397]

INDICTMENTS found and returned in the Superior Court Department on December 15, 1994, and October 26, 1995, respectively.

The cases were tried before *Charles M. Grabau,* J.

*Earl Howard* for the defendant.

*Varsha Kukafka,* Assistant District Attorney, for the Commonwealth.

KASS, J. Eugene Fleming was convicted by a jury of simple assault and battery (G. L. c. 265, § 13A) and armed assault in a dwelling house (G. L. c. 265, § 18A). His appeal challenges only the more serious judgment, that of armed assault in a dwelling. The error claimed is that the Superior Court judge, although pressed by the defense so to do, declined to charge the jury that, to convict under § 18A, they must find the defendant's entry into the dwelling in question was unprivileged, and, hence, unlawful.

Viewing the evidence in the light most favorable to the Commonwealth, see *Commonwealth* v. *Hilton,* 398 Mass. 63, 64-65 (1986), we set out the facts the jury could have found. Norma Jean Hickey and Earl Pittman were overnight counselors at a

---

[1]This case was heard by Justices Armstrong, Kass, and Flannery. Justice Flannery died before the draft was written and circulated. Justice Smith joined the panel and participated in this decision.

residential care facility for mentally retarded persons. That facility, operated by Vinfen Corporation, was a house at 9 Newton Street, Brookline. During the autumn of 1994, the defendant, Fleming, had visited Hickey at least weekly while she was on her night job at 9 Newton Street. He would drop in to talk to Hickey and watch television with her. Fleming was also a frequent caller by telephone. It was the position of Vinfen's program coordinator at 9 Newton Street that on-the-job visits to employees of the kind that Fleming made to Hickey were not allowed. Employees of Vinfen did not, however, tell Fleming to leave and not come back.

Between 2 and 3 A.M. on November 4, 1994, Fleming turned up in the ground floor living room, having let himself in by a back door. That door was generally locked, but not always.[2] Pittman was surprised that Fleming had materialized without anyone letting him in. Soon after his entrance, Fleming and Hickey began to argue. Quickly the quarrel turned to uncontrolled anger on Fleming's part; he began beating Hickey. Pittman stepped between Fleming and Hickey, declaring that he would call the police if Fleming did not back off. Fleming did not, and Pittman picked up the telephone. At that, Fleming grabbed the phone from Pittman and produced a pocket knife that he waved at Pittman, saying, "I'll fuck you up." Hickey fled the room, and Fleming chased after her, providing Pittman with an opportunity to run upstairs and call the police. They responded quickly and apprehended Fleming in bushes outside. The living room at 9 Newton Street, when police entered it, showed signs of battle — a broken bannister, furniture scattered about, and blood on the floor. Hickey was bloodied and weeping.

Making a case under G. L. c. 265, § 18A,[3] requires that the government prove (1) entry of a dwelling while armed; (2) an assault on someone in the dwelling; and (3) a purpose ac-

---

[2]At a preliminary motion hearing, a police officer summoned to 9 Newton Street later on November 4, 1994, testified that he had found the back door unlocked and that he had learned from the program coordinator that this was generally the case. Similar evidence was not adduced at trial.

[3]That statute, as amended by St. 1969, c. 473, reads: "Whoever, being armed with a dangerous weapon, enters a dwelling house and while therein assaults another with intent to commit a felony shall be punished by imprisonment in the state prison for life, or for a term of not less than ten years. No person imprisoned under this section shall be eligible for parole in less than five years."

companying the assault to commit a felony. *Commonwealth* v. *Donoghue*, 23 Mass. App. Ct. 103, 111-112 (1986), cert. denied, 481 U.S. 1022 (1987). *Commonwealth* v. *Manning*, 44 Mass. App. Ct. 695, 706 (1998). Our inquiry focuses on a subset of the first element, whether there was an "entry" in the statutory sense.

An entry, i.e., going in, by an armed person into a dwelling[4] in response to an invitation from a person living there rather obviously is not a violation of the statute. Similarly, an armed policeman with probable cause to think that a crime has been committed in a dwelling who enters it to go about his policing duties has not violated the statute because the entry is privileged. Inherent in the idea of criminal trespass is an unwarranted intrusion, one that the actor was not privileged or licensed to make. *Commonwealth* v. *Ricardo*, 26 Mass. App. Ct. 345, 355 (1988). *Commonwealth* v. *Dunn*, 43 Mass. App. Ct. 58, 60 (1997). Model Penal Code and Commentaries § 221.2 & comment 2, at 88 (1980).

When charging the jury, the judge, as noted before, refused to give an instruction about whether the entry may have been lawful because Fleming had been given license or acquired a privilege to walk into the house at 9 Newton Street. Rather, the judge told the jury that, to convict, they must find that those premises were not the dwelling of the defendant and that he had no right of habitation or occupation at the time of entry. While right of habitation or occupation may, in some cases, be pivotal, as it was in *Commonwealth* v. *Ricardo*, *supra*, it was not in Fleming's case. He claimed no habitation or occupancy right in 9 Newton Street.

The importance of instructing a jury about whether an entry may be permitted or privileged was discussed in *Commonwealth* v. *Robbins*, 422 Mass. 305, 313-316 (1996), not applying G. L. c. 265, § 18A, but in an analogous context. The court decided that juries must be instructed about factors that, in addition to right of occupation or habitation, bear on the defendant's right to enter. Those include whether the entry was permitted, expressly or through cumulative practice; whether the entry was privileged; and whether the defendant knew that he had no right to enter the premises. *Id.* at 315. *Commonwealth* v. *Ricardo*, 26

---

[4] A dwelling is a place of habitation. See *Commonwealth* v. *Ricardo*, 26 Mass. App. Ct. 345, 355-356 (1988).

Mass. App. Ct. at 356. *Commonwealth* v. *Dunn*, 43 Mass. App. Ct. at 60.

Here, Fleming's frequent and arguably unobjected-to visits entitled him to have the jury consider whether he had permission or privilege to enter or reasonably would have thought he had a right to enter 9 Newton Street. In terms of the jury's deliberations, the point was far from a marginal one. See *Commonwealth* v. *Robbins*, *supra* at 315; *Commonwealth* v. *Ford*, 424 Mass. 709, 712 (1997). Fleming is entitled to a new trial on the charge of armed assault in a dwelling house.

On the view we have taken of the case, it is not necessary to consider the other points raised by the defendant on appeal. To the degree it might assist the parties on a retrial, we express our view that the government's evidence was sufficient to withstand a required finding of not guilty. A properly instructed jury might have found that Fleming had no right to enter and knew it. The assistance of Fleming's trial counsel was competent and not ineffective.

The judgment of conviction of assault and battery is affirmed. The judgment of conviction of armed assault in a dwelling is reversed, and the verdict is set aside.

*So ordered.*