## COMMONWEALTH *vs.* RONALD J. SIMMARANO.

No. 98-P-2185.

Worcester. February 23, 2000. - October 25, 2000.

Present: BROWN, PORADA, & BECK, JJ.

*Home Invasion. Practice, Criminal,* Instructions to jury, Assistance of counsel, Preservation of evidence. *Constitutional Law,* Assistance of counsel. *Evidence,* Impeachment of credibility, Prior conviction, Fresh complaint, Cross-examination.

At the trial of an indictment for home invasion, defense counsel had no reasonable tactical basis for failing to request the judge to instruct on the issue of permission to enter the premises and also failed to marshall available evidence on the issue of the victim's consent to the defendant's entry; in the circumstances, counsel's missteps likely had a significant effect on the outcome of the trial, and a new trial was required. [314-317]

At the trial of a criminal case, the judge did not abuse his discretion in permitting, with appropriate instructions, the prosecutor to impeach the defendant with some of his prior convictions. [317]

A criminal defendant did not show a reasonable possibility that audiotapes of a "911" call and a videotape of the defendant's booking, destroyed in conformity with established police archive procedures, held some potentially exculpatory value that would warrant relief. [317-318]

At the trial of an indictment for assault with intent to commit rape, fresh complaint testimony was properly admitted where it was not significantly different from the victim's testimony, and, in any event, no prejudice was shown where the jury acquitted the defendant of that crime. [318]

At a criminal trial, no abuse of discretion was shown in the trial judge's limitation of defense counsel's cross-examination of several government witnesses. [318]

INDICTMENTS found and returned in the Superior Court Department on January 11, 1996.

The cases were tried before *Francis R. Fecteau,* J.

*Chauncey B. Wood* for the defendant.

*Anne S. Kennedy,* Assistant District Attorney, for the Commonwealth.

BROWN, J. The defendant was convicted by a Superior Court

jury of home invasion, G. L. c. 265, § 18C; car-jacking, G. L. c. 265, § 21A; and maliciously damaging a motor vehicle, G. L. c. 266, § 28.[1] On appeal, the defendant has asserted numerous claims of error, most of which are nugatory. We conclude, however, that he received ineffective assistance of counsel, resulting in errors that likely had a significant impact on the jury's consideration of the home invasion count. The judgment as to that offense only is reversed. The other judgments are affirmed.

Based on the evidence presented at trial, the jury could have found the following facts. On the evening in question the defendant was at the home of J.K.,[2] a person with whom he had a long, but intermittent sexual relationship. An argument erupted. The defendant was asked to leave, and he departed some time before midnight. Shortly thereafter, J.K. went to bed.

At 2:00 A.M., J.K. was awakened by a call from the defendant, who was alternately angry and apologetic. By the sound of his voice, J.K. inferred that the defendant was intoxicated. Eventually she hung up, and refused to answer the phone when it subsequently rang.

Sometime after 4:00 A.M., the defendant flagged down a taxi in downtown Worcester. He and an unidentified man got in. The defendant asked to go to J.K.'s address; his companion wanted to go elsewhere. Since the defendant had little or no money, the driver, one Hartigan, told the defendant he could ride along until Hartigan's duties took him into the vicinity of J.K.'s home. At that point, Hartigan would drop the defendant off. The cab set off for the destination requested by the defendant's companion.

After dropping off the unnamed companion, Hartigan and the defendant drove around for awhile and ended up at a donut shop. Eventually, a fight broke out between the defendant and Hartigan, with the result that the defendant assaulted Hartigan and commandeered his cab. The defendant took off for J.K.'s home. Hartigan summoned the police. It was now about 5:30 A.M.

Arriving at J.K.'s residence, the defendant abandoned the cab in the street, after apparently setting a small fire inside. The

---

[1]The defendant was also convicted of two counts of assault and battery (on separate victims), G. L. c. 265, § 13A; those indictments were placed on file.

[2]We do not use the victim's actual name.

defendant then entered J.K.'s apartment, either through a rear screen door or through the bathroom window. J.K. awoke to find the defendant rummaging through a dresser. The defendant then undressed, got into bed, and climbed on top of J.K. He proceeded to tell her about the altercation with Hartigan, including the fact that he had set Hartigan's cab ablaze and left it just outside J.K.'s home. J.K. was nonplussed, asking why he had visited such "craziness" on her.

The defendant then attempted clumsily to remove J.K.'s underwear. He was unsuccessful. As the two struggled, the defendant pressed some implement against J.K.'s neck. About 7:00 A.M., the defendant fell asleep. J.K. then went into another room and called the police. When an officer arrived, J.K. refused to admit him. The officer entered forcibly, saw the defendant passed out on the bed, and took him into custody. J.K. subsequently gave a voluntary statement to police.

Other pertinent facts are included in our analysis as necessary.

1. *Home invasion.* As evidenced by the defendant's trial testimony and, even more pointedly, by his closing argument, the main thrust of the defense theory as to the home invasion count was that the defendant had entered the victim's home by consent. See *Commonwealth* v. *Dunn*, 43 Mass. App. Ct. 58, 60 (1997) (a consensual entry does not fall within the purview of G. L. c. 265, § 18C). To this end, the defendant adduced evidence that he and the victim had engaged in a long-term sexual relationship; that he had slept at her home a number of times in the weeks preceding the attack; that the victim had slept at the defendant's home; and that the defendant had sought and obtained express permission to visit the victim on the night of the attack.[3]

Despite this strong evidence of a close romantic relationship, frequent visitations during the same time frame as the attack (including, as noted, a visit to the victim's home on the very night of the attack), and testimony that the defendant had received permission to visit on the evening in question, the trial

---

[3] Whether this evidence ultimately was excluded, as discussed below, is a significant point. Although the Commonwealth objected when the matter was broached, no motion to strike was made. The judge did not strike the testimony sua sponte. In these circumstances, and because the testimony was, in fact, admissible (and should be admitted, if offered, at any retrial), we will treat the evidence as properly before the jury. See *Commonwealth* v. *Depradine*, 42 Mass. App. Ct. 401, 403 & n.2 (1997).

judge failed to instruct the jury that they could consider whether the defendant's entry was permitted "through cumulative practice," *Commonwealth* v. *Fleming*, 46 Mass. App. Ct. 394, 396 (1999); see *Commonwealth* v. *Robbins*, 422 Mass. 305, 313-316 (1996), or otherwise. This was error.

In *Commonwealth* v. *Fleming*, 46 Mass. App. Ct. at 396-397 (involving an analogous statute, G. L. c. 265, § 18A), like the present case, the defendant adduced evidence that he had entered the victim's residence subject to a license acquired either through express consent or cumulative practice. In such circumstances, we held that the trial judge was obliged to instruct the jury "that, in addition to right of occupation or habitation, [other factors may] bear on the defendant's right to enter." *Id.* at 396. We concluded further in *Fleming* that the judge's refusal to provide such a charge, over the defendant's timely objection, warranted reversal of the defendant's conviction of armed assault in a dwelling (G. L. c. 265, § 18A).

Here, however, unlike in *Fleming*, the defendant made no request for any special charge on permission by cumulative practice or implied consent; likewise, there was no objection when the judge failed to provide an instruction sua sponte. Our review, therefore, is limited to determining whether the judge's omission created an error and, if so, whether there was a substantial risk of a miscarriage of justice. See *Commonwealth* v. *Freeman*, 352 Mass. 556, 563-564 (1967). Alternately — although not urged to do so by the defendant — we permissibly may consider the issue under the rubric of ineffective representation as defined in *Commonwealth* v. *Saferian*, 366 Mass. 89, 96 (1974).

Since the form of review prescribed by *Freeman* is roughly equivalent to the test for assessing attorney error set out in *Saferian*, it generally matters little which standard is applied in any particular case. See *Commonwealth* v. *Curtis*, 417 Mass. 619, 624-625 n.4 (1994). In view of the facts here, however, we conclude that the principles delineated in *Saferian* provide a much better analytical framework.[4] We proceed on that basis.

To obtain relief on grounds of ineffective representation, it is not enough to show that an attorney erred; there also must be

---

[4]Our decision in this regard is motivated, at least in part, by the close connection between the omission of an implied consent instruction and another misstep (discussed *infra*) on defense counsel's part in his examination of witnesses. In the interest of brevity, we view these errors collectively.

evidence that the misstep materially frustrated the defendant's cause. *Commonwealth* v. *Saferian*, 366 Mass. at 96. Here, there is little question of mistake on the part of defense counsel. Having pressed the point hard, both at trial and in closing argument, defense counsel had no reasonable tactical basis for his failure to request an instruction on the issue of permission to enter. Consonant with the familiar litany, this omission fell below the standard of performance expected of an "ordinary fallible" lawyer. *Ibid.* The only question remaining, therefore, is whether the error held any significant potential to affect the outcome of the defendant's trial.

If it were an isolated mistake, it might be possible to discount the impact of defense counsel's omission. After all, the Commonwealth's evidence here was strong. Unfortunately, the error was compounded by a further, related misstep by defense counsel during direct examination of the defendant. Specifically, when defense counsel sought to elicit certain crucial additional testimony regarding the defendant's telephone conversation with the victim on the night of the attack, during which, the defendant claimed, the victim had invited him to visit, the prosecutor lodged an objection on hearsay grounds. The judge then asked defense counsel for his basis for admission.

Despite the fact that the testimony was relevant to the issue of the defendant's intent and state of mind, as well as to the victim's credibility (she previously had testified that she had not invited the defendant to visit), defense counsel could muster no justification. The judge then foreclosed further testimony on this point.

This second error exacerbated defense counsel's failure to request a specific charge on permission to enter the victim's residence. By failing to marshal all available evidence relating to the crucial issue of the victim's consent, defense counsel blunted the force of the defendant's chief — if not only — defense to the most serious crime for which he was on trial. Taken together, defense counsel's missteps likely had a significant effect on the outcome of his trial. The judgment on the conviction of home invasion must be reversed.

In reaching this conclusion, we note that the facts here hardly follow the paradigm of a typical home invasion case. In general, G. L. c. 265, § 18C, has not been applied to situations in which the victim and defendant are intimate friends and frequent visitors to each other's home. It is not our function to second-guess

the charging decisions of the executive branch. However, we observe that, at least in part, the unusual facts here, including the relationship between the victim and defendant, were a factor in our determination of the extent of the prejudice occasioned by defense counsel's mistakes.

2. *Other arguments.* The defendant asserts several further claims. None requires much discussion. We consider each in turn.

First, the defendant asserts that the trial judge erred in permitting the Commonwealth, over his objection, to impeach him with evidence of prior convictions. The question of the admissibility of the defendant's prior offenses was the subject of a pretrial motion in limine. At the hearing on the motion, the judge, in fact, excluded evidence of a prior violent crime committed by the defendant, permitting admission only of prior convictions of larceny and possession of burglarious tools. Those crimes, the judge reasoned, bore directly on the question of honesty.

At the time the evidence of the prior convictions was admitted, the judge provided a firm and accurate limiting instruction, explaining the concept of impeachment evidence carefully. On balance, we discern no abuse of discretion on the judge's part. We note also that the jury ultimately acquitted the defendant on three of the eight offenses for which he was indicted, including a charge of larceny of a motor vehicle.[5] There was no error.

Next, the defendant attacks the judge's refusal to dismiss the indictments here on the basis of the Commonwealth's destruction of an audiotape of 911 calls placed by Hartigan and J.K. and a videotape depicting the defendant's booking. Both apparently were destroyed after ninety days, in conformity with established police archive procedures.[6]

In order to obtain relief where evidence is destroyed, a

---

[5] As noted, evidence of a prior conviction of larceny was admitted.

[6] Although we ultimately conclude that the defendant has not carried his burden of persuasion on the issue of prejudice in this case, we pause to observe that by destroying potentially exculpatory evidence after a relatively short time — ninety days — the Commonwealth is taking unnecessary risk of dismissal or other, lesser sanctions. At least in situations where criminal charges ultimately result, the district attorney would be well advised to see that, to the extent reasonably possible, all pertinent physical evidence in the hands of police (or other agents of the executive branch) is preserved pending trial. At a time when information storage technology permits vast amounts of data to be archived cheaply, permanently, and compactly, there is no excuse

defendant must show a reasonable possibility that the lost evidence held some potentially exculpatory value. See *Commonwealth* v. *Willie*, 400 Mass. 427, 432-433 (1987). Here, the defendant has offered nothing on this front. Absent such a showing, no relief is required — particularly not the drastic remedy of dismissal, which is reserved only for the most egregious abuses.

The defendant also argues that fresh complaint testimony elicited from a police witness exceeded the permissible scope of such evidence. Specifically, the defendant points to a moment when the officer related statements concerning the victim J.K.'s knowledge of the defendant's reputation for violence. The defendant claims that this remark was not corroborative, since the victim, during her direct testimony, made no such statement.

Although the form of the officer's words was different from that of the victim, the victim's testimony was rife with references to her fear of the defendant and her knowledge of his penchant for aggressive conduct. We do not think, therefore, that the challenged statement, in fact, amounted to a significant variation from the victim's trial testimony. See *Commonwealth* v. *Martins*, 38 Mass. App. Ct. 636, 638-639 (1995) (minor variations in testimony of victim and fresh complaint witness less significant than question whether fresh complaint evidence filled substantive gaps in government's case). We also note that the jury acquitted the defendant of assault with intent to rape and of assault and battery with a dangerous weapon on J.K. There was no reversible error.

Finally, the defendant contends that his cross-examination of several other government witnesses was improperly constrained. We need say only that a trial judge enjoys wide discretion to limit the scope of cross-examination. See *Commonwealth* v. *Joyce*, 382 Mass. 222, 231 (1981). That discretion was not abused here.

The judgment on the indictment charging violation of G. L. c. 265, § 18C, is reversed, and the verdict is set aside. The other judgments are affirmed.

*So ordered.*

for destroying electronic recordings (or any other evidence that may be stored on digital media) that hold any potential relevance to a criminal proceeding. The Commonwealth is hereby placed on notice that in subsequent cases we may not be so quick to deem destruction of the type of evidence lost here to be simply the result of benign housekeeping practices.