## Commonwealth *vs.* Dudley Morris.

No. 04-P-73.

Suffolk. February 10, 2005. - July 18, 2005.

Present: Armstrong, C.J., Brown, & Kafker, JJ.

*Armed Home Invasion. Practice, Criminal,* Instructions to jury.

At a criminal trial where the defendant was convicted of armed home invasion, G. L. c. 265, § 18C, as well as assault with intent to kill a person within that home, the judge's omission of an instruction on consensual entry with regard to the armed home invasion charge was not error, where such an instruction had no relevance, because any purported consent to entry would lack legal significance if the defendant were to enter the dwelling armed and intending to commit a crime once inside, as the jury found the defendant here did. [52-55]

Indictments found and returned in the Superior Court Department on October 1, 1998.

The cases were tried before *Thomas E. Connolly,* J.

*Woodrow Brown, Jr.,* for the defendant.

*Paul B. Linn,* Assistant District Attorney, for the Commonwealth.

Armstrong, C.J. The defendant was convicted of armed home invasion, G. L. c. 265, § 18C, and several related offenses. The convictions were based on evidence that the defendant called his former girlfriend, Nichelle Bruce (Nichelle), on the morning of June 14, 1998, and threatened to kill her. Nichelle fled from the house and left her sister, Aiyisha Bruce (Aiyisha), and an aunt to care for Nichelle's children, two of whom were also the defendant's children. Around noon that same day, the defendant entered Nichelle's house, armed with a handgun. He ran to an upstairs bedroom and shot Aiyisha two times. He demanded to know Nichelle's whereabouts and, when Aiyisha refused to tell him, shot her a third time.

The defendant's testimony was that he had come to the house the night before between 11:30 P.M. and midnight to visit the children and had been refused entry by an aunt (Nichelle and Aiyisha were out) because of the lateness of the hour; that Nichelle normally allowed him to visit the children at the house; that he was there frequently; that Nichelle had told him by telephone that morning that he could come; and that the reason he entered with a gun was because he feared Aiyisha and her boyfriend, who had previously threatened him. He said that Aiyisha had previously shown him a gun, and he carried a gun for self-defense. He accidently bumped into Aiyisha at the top of the stairs and, in response to her sudden motion of reaching behind her, which he interpreted as reaching for a gun, he fired to protect himself. The defendant's principal themes at trial were that he was a welcome visitor and that he shot only in self-defense.[1]

On appeal the defendant's arguments relate exclusively to the home invasion conviction. The judge, he argues, erroneously omitted an instruction on consensual entry, and his trial counsel was ineffective in failing to request such an instruction. The omission was pivotal, the defendant argues, because an element of armed home invasion is unlawful entry, *Commonwealth* v. *Dunn*, 43 Mass. App. Ct. 58, 60 (1997), and an entry is not unlawful if it is permitted. Here, the defendant argues, there was evidence that the defendant was at liberty to enter Nichelle's home, both by express permission and by longstanding practice; thus the failure to give an instruction on consensual entry was reversible error, as in *Commonwealth* v. *Fleming*, 46 Mass. App. Ct. 394, 396-397 (1999), and *Commonwealth* v. *Simmarano*, 50 Mass. App. Ct. 312, 314-316 (2000).

We examine the judge's instructions to the jury in their entirety and in the context of the trial. The judge three times instructed the jury that the "entry" element of the offense required the Commonwealth to prove that the defendant "unlawfully ma[de his] way into a dwelling or other house for the

---

[1]The judge instructed that self-defense was not a defense to armed home invasion but was a defense to the companion charge of assault with intent to murder Aiyisha Bruce as well as the lesser included offense of assault with intent to kill.

purposes of committing a crime therein." The words, "unlaw-fully made his way into a dwelling," by themselves carry the implication of an entry without permission. In the cases of *Commonwealth* v. *Fleming, supra,* and *Commonwealth* v. *Simmarano, supra,* the judges' instructions seem to have implied that express consent and long usage were without significance[2]; whereas in *Commonwealth* v. *Mahar,* 430 Mass. 643, 651 (2000), in which the conviction was affirmed, the judge used an identical formulation to that used here, "[i]n criminal law entry is the unlawful making of one's way into a dwelling or other house for the purposes of committing a crime therein." The court in *Mahar* rejected an argument that the judge erred by refusing an instruction that equated "unlawful" with "*not* consensual or privileged" (emphasis in original) and also by refusing an instruction that "[i]f [the defendant] was permitted to enter the house by a lawful occupant then such entry was 'lawful.' " *Ibid.* That decision controls this; for if, in *Mahar,* it was not error for the judge to refuse an instruction elaborating that "unlawful" implied the absence of consent, permission by cumulative practice, or privilege, it was not ineffective as-sistance for the defendant's trial counsel to fail to request such an instruction.[3]

This is not to say that a judge would err by giving such an

---

[2]In *Commonwealth* v. *Fleming, supra,* the judge told the jury that the "entry" element was satisfied if the "premises were not the dwelling of the defendant and that he had no right of habitation or occupation at the time of entry." *Id.* at 396. The opinion in *Commonwealth* v. *Simmarano, supra,* suggests that the judge employed a similar formulation.

[3]In a supplemental instruction in response to a jury inquiry on the element of entry, the judge repeated the earlier definition of entry ("In criminal law, entry is the unlawful making of one's way into a dwelling or other house for the purpose of committing a crime therein"), and then added a further instruction quoting from *Commonwealth* v. *Mahar,* 430 Mass. at 652-653: "A consensual entry . . . does not always correlate with a lawful entry. When consent to enter is allegedly given to someone . . . , the purported consent cannot be . . . legally [sufficient] unless the occupant has been made aware that the person at the door is armed with a dangerous weapon and is about to commit an assault once inside." The significance of the quoted language in this case is that, consistent with the judge's definition of entry, it indicated that actual consent to an entry would be negated if the person giving consent were ignorant of the defendant's intention to commit a crime once inside. In the context of the entire instruction, the supplemental portion did not, as the defendant argues, imply to the jury that the entry was unlawful.

instruction. In cases such as this, where the defendant's claim to being lawfully on the premises rests on the owner's having given permission, or where there is evidence of entry being sanctioned by long usage, it could be helpful to the jury to supply the elaboration to that effect rather than leave it to be implied by the word "lawful." (Here, of course, trial counsel sought no such elaboration, as did the counsel in *Commonwealth v. Mahar*, 430 Mass. at 651.)

In any event, it is clear on the record that giving an instruction on consensual entry would not have affected the jury's verdict on the home invasion charge in this case. The verdict represented a choice between two versions of the events that were totally at odds. On the Commonwealth's evidence, the defendant, enraged at Nichelle, called to say he was coming to kill her, arrived at the house brandishing a gun and barged in, repeated threats to the aunt whom he passed in the kitchen, ran up the stairs and began firing at Nichelle's sister. On the defendant's evidence, he called in advance to see the children, was expected, and used the handgun against Aiyisha under the justifiable misimpression that Aiyisha was about to shoot him. The jury convicted the defendant of assault with intent to kill Aiyisha (thus rejecting the defendant's contention of self-defense); and when the judge's instructions are recalled, the jury, by finding the defendant guilty of armed home invasion, must have found that he had the intention to commit a crime when he came into the house. On this view of the facts, instruction on consensual entry would have had no relevance, for even an express consent to enter is without legal significance if a defendant enters a dwelling armed and intending to commit a crime inside. *Commonwealth v. Mahar*, 430 Mass. at 652-653.[4]

---

[4]The *Mahar* decision points out that the specific intent to commit a crime once inside is not a required element of G. L. c. 265, § 18C, that is to say, an entry may be unlawful for other reasons, but, as the court in *Mahar* points out, the specific intent to commit a crime once inside may have the legal effect of negating consent to enter. *Id.* at 653 ("For practical purposes, permissive entry into a dwelling, and entry while armed in order to commit an armed assault, are mutually exclusive concepts because G. L. c. 265, § 18C, implies, as a matter of public policy, that an occupant of a dwelling cannot consent to allow an armed intruder . . . inside to commit an assault").

Thus, the judge's omission of an instruction expressly dealing with consensual entry was not error.

*Judgments affirmed.*