## COMMONWEALTH *vs.* BRYAN MARSHALL.

No. 04-P-680.

Hampden. October 3, 2005. - March 8, 2006.

Present: LENK, SMITH, & GELINAS, JJ.

*Home Invasion. Statute,* Construction. *Constitutional Law,* Vagueness of statute.

This court concluded that the term "dwelling place of another" appearing in G. L. c. 265, § 18C, the home invasion statute, refers to a place of habitation, i.e., a place in which to sleep, and that the determination whether the dwelling is that of another turns on occupancy and not ownership interests [713-716]; accordingly, at the trial of indictments charging, inter alia, home invasion, the judge properly denied the defendant's motion for a required finding of not guilty, where the jury had before them sufficient evidence to find beyond a reasonable doubt that the defendant, who had made infrequent overnight visits over the course of three months to the apartment he had formerly shared with the victim, did not retain an occupancy right in the apartment on the morning of the home invasion [716-717]; further, the statute was not unconstitutionally vague as applied to the defendant [717].

INDICTMENTS found and returned in the Superior Court Department on May 3, 2001.

The cases were tried before *Judd J. Carhart,* J.

*Richard L. Goldman* for the defendant.

*Jane Davidson Montori,* Assistant District Attorney, for the Commonwealth.

LENK, J. After trial by jury, the defendant, Bryan Marshall, was convicted of murder in the second degree for the killing of Robert Campbell (G. L. c. 265 § 1), home invasion (G. L. c. 265, § 18C), and unlawful possession of a firearm (G. L. c. 269, § 10[*a*]). He appeals only from the home invasion conviction, arguing that (1) the apartment was his dwelling place and, because he did not enter the home "of another" as required by G. L. c. 265, § 18C, the judge improperly denied

his motion for a required finding of not guilty; (2) the statute is unconstitutional as applied because he was not on notice that he could not enter his own dwelling place; and (3) his sentence[1] improperly exceeded the statutory limit of twenty years.[2]

*Background.* We summarize the relevant evidence in the light most favorable to the Commonwealth. *Commonwealth* v. *Clifford*, 374 Mass. 293, 295 (1978). At the time of the shooting on April 10, 2001, Marshall had been in a seven-year relationship with Latanya Wise; they had lived together with Wise's son Shaquon[3] for three years, most recently at 17 Reed Avenue in Chicopee. Marshall contributed to household expenses, including rent and automobile expenses, and helped Wise pay for professional courses and training. He also shared child care responsibilities and costs associated with raising a child, and frequently took Shaquon to sports practices and medical appointments. He continued to fulfil these responsibilities after January 10, 2001, when Wise had him leave the Reed Avenue apartment.

Wise and Marshall had been trying for some time to have a baby and, on January 10, 2001, Wise had her second miscarriage in two years. When Marshall then admitted that another woman was pregnant with his child, Wise told him that she wanted to end the relationship. After Marshall packed up his clothes and personal belongings, Wise drove him to his brother's house in Springfield and took back his household keys. Hoping to renew the relationship, however, Marshall continued to call Wise, and continued to see Shaquon.

During March and April, 2001, Marshall came, on occasion and with Wise's permission, to the apartment, and they spent a

---

[1]Marshall was sentenced to a term of life on the murder conviction, a concurrent term of twenty to thirty years on the home invasion conviction, and a concurrent term of three to five years on the unlawful possession of a firearm conviction.

[2]The Commonwealth does not contest that G. L. c. 265, § 18C, provides for a minimum sentence of ten years and a maximum sentence of twenty years. See *Commonwealth* v. *Berte*, 57 Mass. App. Ct. 29, 32-33 (2003). Marshall, who was sentenced to a term of twenty to thirty years on the home invasion conviction, is accordingly entitled to have the improper sentence vacated and the matter remanded for resentencing.

[3]Although Shaquon was not Marshall's biological son, Shaquon regarded him as his father.

few nights together. Wise acknowledged at trial that during this period her behavior toward Marshall vacillated. One day in the last week or two of March, after Marshall proposed marriage to Wise and gave her an engagement ring, they spent the night together in the apartment. In the morning, however, Wise told Marshall she had changed her mind; hurt and angry at Marshall's relationship with another woman, Wise told him she did not want him in the apartment. Marshall and Wise thereafter saw each other five times in early April, 2001. They celebrated his birthday on April 7, 2001, after which Marshall spent the night. Meanwhile, Wise noticed that Marshall appeared depressed; he had lost weight, stopped shaving, cried frequently, and, about two weeks prior to the shooting, had threatened to kill himself. When Marshall came to the apartment at 1:00 A.M. on April 9, Wise, seeing that he was crying and had been drinking, permitted him to stay; he spent that night together with her in bed.

Later that morning, Marshall dropped Shaquon at school and drove Wise to work. He kept the car all day on April 9, took Shaquon to a dental appointment after school, then picked Wise up at work, after which they all went to Shaquon's soccer practice and out to dinner. When they returned, there was a message on the answering machine, which Marshall heard, from one Robert Campbell, saying that he was returning Wise's call and would talk to her later. Marshall and Wise fought about their relationship while Wise drove Marshall to a friend's house at about 9:00 P.M. When Wise returned home, she put Shaquon to bed, called Campbell, and asked him to come over; he arrived at about 10:00 P.M.

At about 11:00 P.M. Marshall called Wise, wanting to talk about the argument they had had earlier in the car. Wise refused to talk to him and hung up. He called back a few minutes later, asking if someone else was there; Wise denied this, hung up, and turned off the telephone ringer. When Marshall called a third time, she let the answering machine pick up. She then unplugged the answering machine and, after making sure all the doors were locked, went to sleep around midnight. Campbell remained in the living room watching a movie.

Several hours later, at about 1:00 A.M. on April 10, 2001,

Wise was awakened when she heard the back door to the apartment close and saw the light turn on in the kitchen. Marshall came into her bedroom and sat on the bed; Wise asked him what he was doing there and told him she was going to call the police. He responded, "I can't be here?" and, "You would really call the police on me?" to which she replied, "Yeah, I'm calling right now." Wise testified on direct examination that she then went into the kitchen to use the phone and, on cross-examination, testified that she wanted to escort Marshall out of the apartment.

As they entered the kitchen, Marshall saw Campbell at the front door holding his coat and cellular telephone in his hands. Marshall pulled a gun out of the waistband of his pants, fired three shots at Campbell, killing him, and then left by the back door. Wise, who was terrified but otherwise unhurt, called the police, who arrived at 1:07 A.M. The next day, the police found Marshall in Springfield and arrested him.

Upon searching the Reed Avenue apartment, the police noticed that the hatchway door in the back of the building was open, and the lock on the back door of the apartment had been pried open. There was splintering around the door lock, and an L-shaped carpenter's square outside the door. Wise testified that the back door was not damaged prior to April 10, and another witness testified that he stored a carpenter's square in the basement of the building.

Some of Marshall's effects were found in the apartment, including a tie hung on a light in the bedroom, and some clothing on the washing machine in the basement, which Wise testified Marshall no longer wore. The police found three photographs of Marshall and his high school diploma in the rear bedroom; his birth certificate on the kitchen table; a note from him on the refrigerator; a valentine card from Marshall to Wise; and eight or nine small pieces of mail addressed to Marshall at 81 Sycamore Street in Springfield, his brother's house.

*Discussion.* 1. *Denial of the motion for a required finding of not guilty.* The defendant argues that the prosecution failed to prove the first element of G. L. c. 265, § 18C, "knowingly

enter[ing] the dwelling place of another."[4] He contends that the evidence requires the conclusion that the apartment belonged to him as much as it did to Wise, remained his dwelling place, and, as matter of law, was not the "dwelling place of another." Accordingly, he argues the matter never should have gone to the jury, however correctly they then may have been instructed. The evidence on which he relies in this regard includes: his possession of keys to the apartment during the daytime on April 9, preceding the early morning April 10 shooting; his ongoing and on occasion intimate contact with Wise after January 10, 2001; his frequent presence in the apartment and his continued contact with Shaquon; his response to Wise when he went into her bedroom in the early hours of April 10, 2001 ("I can't be here?" and "You would really call the police on me?"); and, finally, his financial contributions to rent and other household expenses through April, 2001.

We review the judge's denial of a motion for a required finding of not guilty pursuant to Mass.R.Crim.P. 25(a), as amended, 420 Mass. 1502 (1995), to determine "whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Commonwealth* v. *Cintron*, 435 Mass. 509, 514 (2001), quoting from *Commonwealth* v. *Latimore*, 378 Mass. 671, 677 (1979). The question before us is whether, as matter of law, the evidence in this case was sufficient to have satisfied the jury beyond a reasonable doubt that the defendant entered "the dwelling place *of another*" (emphasis supplied). G. L. c. 265, § 18C.[5]

The phrase "dwelling place of another" is not defined in the

---

[4]General Laws c. 265, § 18C, inserted by St. 1993, c. 333, reads: "[w]hoever knowingly enters the dwelling place of another knowing or having reason to know that one or more persons are present within or knowingly enters the dwelling place of another and remains in such dwelling place knowing or having reason to know that one or more persons are present within while armed with a dangerous weapon, uses force or threatens the imminent use of force upon any person within such dwelling place whether or not injury occurs, or intentionally causes any injury to any person within such dwelling place shall be punished by imprisonment in the state prison for life or for any term of not less than twenty years."

[5]As in *Commonwealth* v. *Simmarano*, 50 Mass. App. Ct. 312 (2000), the

home invasion statute. Where the Legislature does not define a statutory term, we look to similar terms in related statutes to determine legislative intent. *Commonwealth* v. *Stokes*, 440 Mass. 741, 747-748 (2004). "Terms appearing within the same or related statutes are to be given the same meaning unless the Legislature intends a different meaning." *Commonwealth* v. *Dunn*, 43 Mass. App. Ct. 58, 60 (1997). We therefore look to the closely related burglary statutes, G. L. c. 265, § 18A, and G. L. c. 266, §§ 14-19, in order to ascertain the meaning of "dwelling place of another." See *Commonwealth* v. *Dunn*, *supra*.

At common law, burglary encompassed the breaking and entering of a dwelling of another, an offense against such person's right of habitation. Nolan & Sartorio, Criminal Law § 404 (2001). See *Commonwealth* v. *Correia*, 17 Mass. App. Ct. 233, 235 (1983). Statutory burglary embodies the common-law definition, and thus, the phrase "dwelling house," which appears in G. L. c. 266, § 14,[6] refers to a place of habitation.

---

facts of this case depart from the paradigmatic home invasion case. While G. L. c. 265, § 18C, has been employed infrequently in cases where the defendant and the victim have been in some form of ongoing relationship and the defendant was a frequent visitor in the victim's home, we do not "second-guess the charging decisions of the executive branch." *Commonwealth* v. *Simmarano*, *supra* at 316-317. In *Simmarano*, the female victim had a long, but intermittent, sexual relationship with the male defendant. *Id.* at 313. She asked him to leave one night after an argument and hung up on him when he later called her. *Ibid.* He subsequently entered the apartment through either a rear screen door or the bathroom window. *Id.* at 313-314. We reversed the home invasion conviction because defense counsel provided ineffective assistance in failing to request that the judge charge the jury on consent to entry through cumulative practice. *Id.* at 315-317. We did not address whether the judge should have given, sua sponte, such an instruction. *Id.* at 315. See *Commonwealth* v. *Fleming*, 46 Mass. App. Ct. 394, 396-397 (1999) (judge's failure, over defendant's timely objection, to instruct the jury that they could consider whether the defendant's entry was permitted by virtue of cumulative practice, warranted reversal of his conviction pursuant to G. L. c. 265, § 18A). In contrast, the defendant here does not contend that he received the ineffective assistance of trial counsel and concedes on appeal that the judge correctly instructed the jury on the factors to be considered in determining whether the Commonwealth proved that Marshall entered the dwelling place of another.

[6]General Laws c. 266, § 14, reads, in pertinent part: "[w]hoever breaks and enters a dwelling house in the night time, with intent to commit a felony, or whoever, after having entered with such intent, breaks such dwelling house in the night time, any person being then lawfully therein, and the offender being armed with a dangerous weapon at the time of such breaking or entry, or so

*Commonwealth* v. *Correia, supra* at 234-235. In *Commonwealth* v. *Robbins,* 422 Mass. 305, 313 (1996), the threshold question in ascertaining whether a conviction pursuant to G. L. c. 266, § 14, could stand was whether the defendant had a "right of habitation or occupancy" in the premises at the time of his forced entry into such premises. Similarly, the term "dwelling house" in the context of G. L. c. 265A, § 18A,[7] echoes the common-law concept, namely, it is taken to be "one of habitation" or "a place to sleep in." *Commonwealth* v. *Ricardo,* 26 Mass. App. Ct. 345, 355 (1988) (citations omitted). "In determining whether a common law dwelling house is that of a defendant or another, the controlling question is occupancy rather than ownership." *Ibid.* (quotations and citations omitted). In like manner, we conclude the term "dwelling place of another" appearing in § 18C refers to a place of habitation, a place in which to sleep. The controlling question with respect to the home invasion statute is whose place of habitation it is, and that question turns on occupancy and not ownership interests.

The jury had before them sufficient evidence to find beyond a reasonable doubt that Marshall did not have a right of habitation or occupancy in the Reed Avenue apartment on the morning of April 10, 2001. Although Marshall spent the night of April 8 in the apartment that he had formerly shared with Wise, and may have expressed some surprise when Wise did not want him there the next night as well, the April 8 overnight stay was one of only several such instances in the prior three months. All of Marshall's clothes and most of his personal effects had been removed months earlier, with the exception of clothes he no longer wore and one tie. Nor does adding to this mix Marshall's contributions to household expenses and child care compel the conclusion that he retained, on April 10, 2001, an occupancy right in the apartment. The jury were free to weigh all this

arming himself in such house, or making an actual assault on a person lawfully therein, shall be punished by imprisonment in the state prison for life or for any term of not less than ten years."

[7]General Laws c. 265, § 18A, as appearing in St. 1969, c. 473, reads, in pertinent part: "[w]hoever, being armed with a dangerous weapon, enters a dwelling house and while therein assaults another with intent to commit a felony shall be punished by imprisonment in the state prison for life, or for a term of not less than ten years."

evidence as they chose, having also before them evidence that Wise had asked Marshall to leave the apartment on January 10, 2001, and that he complied with her request when he packed up his things, gave Wise his keys, and moved in with his brother. There was ample evidence that Marshall thereafter visited the apartment or took Shaquon to various activities only with Wise's permission or at her request. The matter was one of fact properly before the jury on sufficient evidence permitting them to find beyond a reasonable doubt that the Reed Avenue apartment was the dwelling place of another. The judge did not err when he denied the defendant's motion for a required finding of not guilty.

2. *Unconstitutionality of G. L. c. 265, § 18C, as applied.* Although Marshall argues on appeal that the statute is unconstitutional as applied insofar as he was not on notice that he could not enter his own dwelling place, he failed to preserve the issue below. A "challenge to the constitutionality of a statute *as applied* should be preserved in a motion for a required finding of not guilty under Mass.R.Crim.P. 25." *Commonwealth* v. *Oakes*, 407 Mass. 92, 94 (1990). Although we may consider issues not raised below, "our power to do so is rarely exercised, and is exercised only in response to a serious and obvious error creating a substantial risk of a miscarriage of justice." *Id.* at 94-95. We discern no such risk. We already have concluded that the evidence supported a finding beyond a reasonable doubt that the defendant had no right of habitation or occupancy in the apartment. Given that his conduct "fell squarely within the statute," there is no merit to the argument that the statute was unconstitutionally vague as applied to him. See *Commonwealth* v. *Poillucci*, 46 Mass. App. Ct. 300, 305 (1999).

*Conclusion.* The judgments on the murder in the second degree and unlawful possession of a firearm convictions are affirmed. As explained in note 2, *supra*, the sentence on the home invasion conviction is vacated and the matter is remanded for resentencing consistent with this opinion.

*So ordered.*