## COMMONWEALTH vs. MYLES R. MIRANDA.

Barnstable.    December 18, 1985. — April 7, 1986.

Present: ARMSTRONG, CUTTER, & KASS, JJ.

*Practice, Criminal,* Trial jury-waived, New trial, Appeal, Assistance of counsel, Failure to make objection, Argument by counsel. *Constitutional Law,* Assistance of counsel, Right to make closing argument.

Discussion of the recognized exceptions to the rule that the failure of a criminal defendant claiming error in his trial to make timely objection to the trial judge and to raise his point on appeal will preclude him from raising it later by a motion for a new trial. [14-19]

A criminal defendant who contended that reversible error had occurred at his jury-waived trial in that the judge, declaring that his mind was made up, had precluded his attorney from making closing argument was not relieved of his obligation to make a timely objection to the trial judge where, at the time of his trial in 1976, the defendant's constitutional right to present closing argument had been developed sufficiently to afford the defendant a genuine opportunity to raise his claim. [19-20]

A criminal defendant whose attorney at his jury-waived trial failed to object to the action of the judge precluding counsel from making closing argument, was not thereby deprived of his right to the effective assistance of counsel, since the right to make closing argument at a bench trial, at the time of the defendant's trial in 1976, was not familiar law and since, in the circumstances, an objection would probably have been futile. [20-21]

The judge at a jury-waived trial, who, after declaring that his mind was made up, precluded counsel from making closing arguments, thereby created a substantial risk of a miscarriage of justice, necessitating a new trial, since the right to make closing argument is included within "the basic right . . . to make a defense," since, in the defendant's case, the evidence did not point overwhelmingly to guilt, and since this court could not justly draw an inference that counsel had intended to give a perfunctory closing argument or none at all. [21-23]

INDICTMENTS found and returned in the Superior Court on October 3, 1975.

The cases were heard by *Henry H. Chmielinski, Jr.,* J., and a motion for a new trial was heard by *John D. Sheehan,* J.

*Thomas C. Federico,* Committee for Public Counsel Services, for the defendant.

*Richard J. Piazza,* Assistant District Attorney, for the Commonwealth.

ARMSTRONG, J. The defendant Miranda and two other prisoners in the Barnstable County house of correction were tried in May 1976, before a judge sitting without a jury on several indictments for rape, sodomy, and assault and battery, the victims being other prisoners. The involved prisoners all testified, alleged perpetrators as well as one victim (the other victim had died, apparently for unrelated reasons, prior to trial). At the close of the evidence, the trial judge stated:

> "Well, gentlemen, I don't think it is necessary to have arguments in this. I am actually giving no credibility whatsoever to the testimony of the three defendants. I don't believe a word they said. With that in mind, it would be superfluous to argue the case. I am finding them all guilty as charged."

None of the three defense counsel formally objected to this procedural shortcut, although counsel for Miranda did suggest in his remarks on sentencing that he had intended and would have preferred to give a summation before the judge's finding was rendered.[1] Nevertheless, counsel for Miranda did not appeal,[2] nor, so far as we have been able to ascertain from appellate dockets, did counsel for the other defendants.

---

[1] The transcript records his opening remarks at sentencing as follows: "Your Honor, in the case of Myles Miranda, all of my thoughts that I have accumulated today, your Honor, are washed out by the decision that you made. I won't comment on them in any way. It was a long trial and the mitigating things that I thought would be presentable in conjunction with the merits of the case."

[2] He was later denied permission to file a late appeal based on a contention of involuntary waiver of the right of trial by jury. See *Miranda* v. *Commonwealth,* 392 Mass. 420 (1984).

In January, 1985, Miranda, represented by new counsel, filed a motion for a new trial,[3] based on a contention that the action of the trial judge in foreclosing summations by counsel deprived him of a fundamental constitutional right which had been announced in *Herring* v. *New York,* 422 U.S. 853 (1975), about a year before his trial. The trial judge having resigned before the motion for a new trial was filed, the motion was heard by another judge, who denied it on the ground that defense counsel had taken no objection to the trial judge's action and thus the issue was not presented.

In *Herring* v. *New York,* the Supreme Court invalidated a New York statute which was interpreted as giving a judge sitting without jury at a criminal trial discretion whether to entertain summations. In express reliance on that statute, the trial judge in *Herring* had denied defense counsel's request to be allowed to give a closing argument. The *Herring* case held that the right to make a summation is an integral part of a defendant's fundamental right to the assistance of counsel,[4] and that the right is not of less significance when the case is tried to a judge rather than to a jury.[5] The *Herring* case also suggested (422 U.S. at 863-864), and is generally read as having held (see, e.g., *Patty* v. *Bordenkircher,* 603 F.2d 587, 589 [6th Cir. 1979]; *United States,* v. *Spears,* 671 F.2d 991, 992 [7th Cir. 1982]; *Adams* v. *Balkom,* 688 F.2d 734, 739 n.1 [11th Cir. 1982]; *Thomas* v. *United States,* 473 A.2d 378 (D.C. 1984]; *State* v. *Gilman,* 489 A.2d 1100, 1103 [Me. 1985]), that a defendant who is denied the right to present closing argument

---

[3] The present motion under Mass.R.Crim.P. 30 (b), 378 Mass. 900 (1979), is the first such motion in these cases. Contrast *Commonwealth* v. *Deeran,* 397 Mass. 136 (1986).

[4] "[N]o aspect of such advocacy could be more important than the opportunity finally to marshal the evidence for each side before submission of the case to judgment." 422 U.S. at 862.

[5] The court suggested that the right may be more valuable when the case is tried to a judge, on the theory that he would otherwise lack "the stimulation of opposing viewpoints inherent in the collegial decision-making process of a jury." 422 U.S. at 863-864 n.15.

will be entitled to reversal without making a showing of prejudice.[6]

There can be no doubt that, if Miranda's counsel had registered an objection to the short-circuiting of closing arguments and, under the practice at that time (i.e., before Mass.R.Crim.P. 22, 378 Mass. 892 [1979]), had taken an exception, Miranda's conviction would have been reversed on appeal. With substantial consensus, courts in other jurisdictions that have considered similar situations have arrived at the conclusion that an error of this type is difficult to remedy even if inadvertent and is irremediable where, as here, the judge has made remarks to the effect that argument would not cause him to change his mind. See *United States* v. *Walls,* 443 F.2d 1220, 1223-1224 (6th Cir. 1971); *United States* v. *King,* 650 F.2d 534, 536-537 (4th Cir. 1981); *Grigsby* v. *State,* 333 So. 2d 891, 893 (Ala. Crim. App.), cert. denied, 333 So. 2d 894 (Ala. 1976); *In re William F.,* 11 Cal. 3d 249, 255 n.5 (1974); *State* v. *Gilman,* 489 A.2d 1100 (Me. 1985); *Yopps* v. *State,* 228 Md. 204, 207 (1961); *Spence* v. *State,* 296 Md. 416, 423 (1983); *Moore* v. *State,* 7 Md. App. 330, 333-334 (1969); *Jones* v. *State,* 55 Md. App. 695, 700 (1983); *Columbus* v. *Woodrick,* 48 Ohio App. 2d 274, 277-278 (1976); *Commonwealth* v. *Miller,* 236 Pa. Super. Ct. 253, 256-257 (1975); *Commonwealth* v. *Dinkins,* 272 Pa. Super. Ct. 387, 390-391 (1979). But see *People* v. *Daniels,* 51 Ill. App. 3d 545, 548 (1977); *Commonwealth* v. *Cooper,* 229 Pa. Super. Ct. 52, 55 (1974).

Unlike such cases as *United States* v. *Spears,* 671 F.2d 991, 994-995 (7th Cir. 1982), *Lee* v. *State,* 175 Ind. App. 17, 21-22 (1977) (Staton, J., concurring), *State* v. *Mann,* 361 A.2d 897, 905 (Me. 1976), *State* v. *Hale,* 472 S.W. 2d 365, 366 (Mo. 1971), and *State* v. *Rojewski,* 202 Neb. 34, 38 (1979), there

---

[6] "Some cases may appear to the trial judge to be simple — open and shut — at the close of the evidence. . . . But . . . there will be cases where closing argument may correct a premature misjudgment or avoid an otherwise erroneous verdict. And there is no certain way for a trial judge to identify which cases these will be, until the judge has heard the closing summation of counsel." 422 U.S. at 863.

was no way for counsel in this case to anticipate that the judge was about to announce his finding. We cannot fairly imagine a time break between the judge's first sentence and those that followed. Contrast *People* v. *Manning,* 120 Cal. App. 3d 421, 425-426 (1981). Rather, his four sentences together constituted an unbroken thought — that argument was superfluous because he had already determined that the defendants were guilty. Counsel could, however, have made an objection after the finding and raised the point on appeal, but he did not do so.

In most cases a failure by a defendant to make his objection known to the trial judge and to raise the point on appeal, where he could have done so, will preclude his raising it later on in a motion for a new trial. This principle has been fundamental to our practice, both before and after the adoption of the rules of criminal procedure. See *Commonwealth* v. *McLaughlin,* 364 Mass. 211, 229 (1973); *Commonwealth* v. *Pisa,* 384 Mass. 362, 366 (1981); *Commonwealth* v. *Turner,* 393 Mass. 685, 689 (1985). It is a principle which has been held to limit the rule announced in *Earl* v. *Commonwealth,* 356 Mass. 181, 184 (1969), that if "the original trial was infected with prejudicial constitutional error the judge has no discretion to deny a new trial." See *Commonwealth* v. *Underwood,* 358 Mass. 506, 511-512 (1970); *Commonwealth* v. *Antobenedetto,* 366 Mass. 51, 58-59 (1974).

Traditionally this rule was subject to exception principally for matters relating to the jurisdiction of the court (including a failure of the indictment or complaint to charge an offense,[7] a conviction of an offense not charged,[8] or a sentence in excess of that provided for the offense found[9]). Otherwise, a criminal judgment was treated as final unless, on a showing either on or beyond the record, it should be found that a waiver or plea was involuntary, or the defendant incompetent to stand trial,

---

[7] *Commonwealth* v. *Andler,* 247 Mass. 580, 581-582 (1924).

[8] *Commonwealth* v. *Rodriguez,* 11 Mass. App. Ct. 379, 381-382 (1981).

[9] *Commonwealth* v. *Conroy,* 333 Mass. 751, 757 (1956). The court will also correct duplicative sentences in the absence of objection. See *Commonwealth* v. *Grasso,* 375 Mass. 138, 140 (1978); *Commonwealth* v. *Stewart,* 375 Mass. 380, 393 (1978).

or, on a showing of newly discovered evidence, the trial court should exercise its discretion to grant a new trial. Compare *Ciummei* v. *Commonwealth,* 378 Mass. 504, 509 & n.8 (1979). Such matters by their nature would not normally be made the basis for objection at the trial, or, unless new counsel appears for the defendant at the appellate level, the subject of direct appeal.

In recent years five exceptions to the traditional rule have been applied with some frequency. One is review of a conviction under G. L. c. 278, § 33E, under a standard variously expressed as "only upon a showing of grave prejudice or substantial likelihood that a miscarriage of justice has occurred," [10] "where . . . for some . . . reason justice requires a new trial," [11] or to achieve a result "more consonant with justice." [12]

In cases subject to § 33E, review is said to be "obligatory", *Commonwealth* v. *Davis,* 380 Mass. 1, 15 n.20 (1980); *Commonwealth* v. *Cole,* 380 Mass. 30, 38 (1980), but the standard is said to be "essentially discretionary", *Commonwealth* v. *Grace,* 381 Mass. 753, 759 (1980). Review encompasses matters of fact as well as law. Review under § 33E, however, is available only in the Supreme Judicial Court and applies only to convictions of murder in the first degree.[13]

---

[10] *Commonwealth* v. *Roberts,* 378 Mass. 116, 123 (1979). *Commonwealth* v. *Garcia,* 379 Mass. 422, 439 (1980). *Commonwealth* v. *Grace,* 381 Mass. 753, 759 (1980). *Commonwealth* v. *Hurley,* 391 Mass. 76, 81 (1984) ("'to determine whether there was any miscarriage of justice'"). *Dickerson* v. *Attorney Gen.* 396 Mass. 740, 744 (1986) (same).

[11] *Commonwealth* v. *DeChristoforo,* 360 Mass. 531, 540 (1971). *Commonwealth* v. *Hall,* 369 Mass. 715, 717 (1976). *Commonwealth* v. *Grace,* 381 Mass. at 757 ("if satisfied that . . . for any . . . reason . . . justice may require," quoting from § 33E). *Dickerson* v. *Attorney Gen.,* 396 Mass. at 742 ("if the interests of justice so require").

[12] *Commonwealth* v. *Seit,* 373 Mass. 83, 94 (1977). *Commonwealth* v. *Davis,* 380 Mass. 1, 15 n.20 (1980). *Commonwealth* v. *Cole,* 380 Mass. 30, 38 (1980).

[13] Prior to St. 1979, c. 346, § 2, review under § 33E extended also to convictions of second degree murder based on indictments for first degree murder. See *Commonwealth* v. *Bearse,* 358 Mass. 481, 485 (1970); *Commonwealth* v. *Davis,* 380 Mass. at 12-14.

A second exception is that exercised in *Commonwealth* v. *Freeman,* 352 Mass. 556, 563-564 (1967), which recognized[14] the authority of a reviewing court to correct an error which "was of a type and seriousness which should lead [the court] to reverse in the absence of a proper exception. The test is whether there is a substantial risk of a miscarriage of justice." *Id.* The *Freeman* exception is more widely available than that under § 33E, applying, potentially, in any criminal case, whether reviewed in this court or the Supreme Judicial Court. The scope of review, however, is narrower, not extending to questions concerning the weight of the evidence, and applying, as to alleged errors of law, only the restrictive "miscarriage" standard, sometimes, but not always, applied in § 33E cases.

A third exception, which might be called the "clairvoyance" exception, applies to errors of constitutional dimension where the constitutional principle offended against "was [not] sufficiently developed at the time of the [defendant's] trial and appeal to afford the [defendant] a genuine opportunity to raise his claim," *DeJoinville* v. *Commonwealth,* 381 Mass. 246, 248 (1980), and where the principle, when fully developed, is to be given retroactive application. Despite the retroactivity, State courts are free, under the Federal Constitution, to confine review to those cases in which counsel properly saved his client's rights by objection, *Hankerson* v. *North Carolina,* 432 U.S. 233, 244 n.8 (1977); but that approach was rejected in *Commonwealth* v. *Stokes,* 374 Mass. 583, 588-590 (1978), because "to hold otherwise would be tantamount to requiring clairvoyance on the part of defense counsel . . . ." *Id.* at 588. "It would be inconsistent to hold on the one hand that a substantive rule of constitutional dimension is completely retroactive and to insist, on the other hand, that defense counsel must have anticipated the rule in the form of an objection or exception before it may be applied retroactively." *Id.* 589-590. The clair-

---

[14] The power to review by this standard was mentioned, but not exercised, in *Commonwealth* v. *Dascalakis,* 246 Mass. 12, 25 (1923), *Commonwealth* v. *McDonald,* 264 Mass. 324, 336 (1928), and *Commonwealth* v. *Taylor,* 319 Mass. 631, 633 (1946). See also *Commonwealth* v. *Conroy,* 333 Mass. at 756-757, which may represent an exercise of the power before *Freeman.*

voyance exception has been applied principally in pre-*Mullaney*[15] or pre-*Rodriguez*[16] cases involving burden-shifting jury instructions, or pre-*Sandstrom*[17] instructions employing conclusive presumptions. See, e.g., *Commonwealth* v. *Stokes,* 374 Mass. at 588-589; *DeJoinville* v. *Commonwealth,* 381 Mass. at 248-251; *Commonwealth* v. *Nieves,* 394 Mass. 355, 359 (1985). See also *Commonwealth* v. *McDuffee,* 379 Mass. 353 (1979), reversing, as burden-shifting, the rule followed in *Commonwealth* v. *Giles,* 350 Mass. 102, 110 (1966), that the element of materiality in a perjury prosecution presents a question of law to be determined by the judge rather than by the jury;[18] and *Commonwealth* v. *Rembiszewski,* 391 Mass. 123, 126-127 (1984) (use of examples of family, social and economic decisions in explaining "reasonable doubt"). Earlier cases suggested that reversal would be ordered under the clairvoyance exception only where the error created a substantial risk of a miscarriage of justice. See, e.g., *Commonwealth* v. *Hughes,* 380 Mass. 596, 601 (1980); *DeJoinville* v. *Commonwealth,* 381 Mass. at 248 n.2. More recent cases have indicated that the standard of review under this exception is the same as the standard (reversal except where error was harmless) applied where an objection has been properly saved at trial and raised on direct appeal. See *Commonwealth* v. *Kater,* 388 Mass. 519, 533 (1983); *Commonwealth* v. *Rembiszewski,* 391 Mass. at 126; *Commonwealth* v. *Nieves,* 394 Mass. at 359.

A fourth recognized exception is where the failure to object at trial or to raise an error on appeal amounts to ineffective assistance of counsel. Here the principles seem well established, if not always easy to apply. The omission by counsel

---

[15] *Mullaney* v. *Wilbur,* 421 U.S. 684 (1975).

[16] *Commonwealth* v. *Rodriguez,* 370 Mass. 684 (1976).

[17] *Sandstrom* v. *Montana,* 442 U.S. 510 (1979).

[18] The trial took place after *Mullaney* v. *Wilbur,* but the court reasoned that the failure to object must, as matter of fairness, be excused because the application of the burden-shifting principle to the rule on materiality was far from clear, and the judge, if confronted with an objection, would in all probability have felt obliged to follow the rule long established and recently applied.

must amount to "serious incompetency, inefficiency, or inattention of counsel — behavior . . . falling measurably below that which might be expected from an ordinary, fallible lawyer," *Commonwealth* v. *Saferian,* 366 Mass. 89, 96 (1974); and the omission must have "deprived the defendant of an otherwise available, substantial ground of defence." *Id.* See *Commonwealth* v. *Murray,* 396 Mass. 702, 710 n.16 (1986).

The fifth exception relates to trial errors first raised by a motion for a new trial, which the trial judge, in the exercise of his discretion, decides to consider on the merits despite the failure to raise them by objection at the trial. Issues thus considered "are resurrected and preserved for appellate review as if brought on direct appeal." [19] *Commonwealth* v. *Buckley,* 17 Mass. App. Ct. 373, 374 (1984). Examples include *Commonwealth* v. *McGrath,* 361 Mass. 431, 435 n.2 (1972); *Commonwealth* v. *Thompson,* 362 Mass. 382, 384 n.2 (1972); *Commonwealth* v. *Gagne,* 367 Mass. 519, 525-526 (1975); *Commonwealth* v. *Harrington,* 379 Mass. 446, 449 (1980); *Commonwealth* v. *Flemmi,* 2 Mass. App. Ct. 533, 535 (1974); *Commonwealth* v. *Donovan,* 15 Mass. App. Ct. 269, 273-274 (1983); and *Commonwealth* v. *Nicholson,* 20 Mass. App. Ct. 9, 12 (1985).

Isolated passages are sometimes found suggesting the existence of a discrete exception for constitutional error. Firm authority is lacking for such a proposition, and the suggestive passages generally appear in connection with the application of one of the other recognized exceptions. See, e.g., *Commonwealth* v. *McDuffee,* 379 Mass. at 360; *Commonwealth* v. *Flemmi,* 2 Mass. App. Ct. at 535. The existence of a separate exception for constitutional error is negated by such cases as *Commonwealth* v. *Underwood,* 358 Mass. at 511-512, *Commonwealth* v. *Antobenedetto,* 366 Mass. at 58, and *Commonwealth* v. *Fluker,* 377 Mass. 123, 131 (1979). Such an exception, if it existed, would be likely to swallow the rule, because many, if not a majority, of the errors alleged to have occurred at trial currently are argued on appeal as deprivations of con-

---

[19] "The trial judge's discretionary power," however, "should be exercised only in those extraordinary cases where, upon sober reflection, it appears that a miscarriage of justice might otherwise result." *Commonwealth* v. *Harrington,* 379 Mass. 446, 449 (1980).

stitutional right.[20] See Friendly, Is Innocence Irrelevant? Collateral Attack on Criminal Judgments, 38 U. Chi. L. Rev. 142, 156 (1970).

We look, then, to the five recognized exceptions to determine whether the defendant's failure to object to the by-passing of argument precludes his relying on it now. Two of the exceptions may be dismissed out-of-hand: the § 33E exception, because this is not a capital case (and because the statute applies only in the Supreme Judicial Court); and the exception where the judge in the trial court exercises his discretion to consider the point on the merits, because here the judge expressly relied on the failure to object at the trial as the determinative ground for denying the motion. See Commonwealth v. McLaughlin, 364 Mass. at 230-231.

The clairvoyance exception is inapplicable for several reasons. First, the Herring case was decided a year before the trial. It has not been the subject of later amplification by the Supreme Court which would have made its application more apparent now than it was at the time of trial. Contrast DeJoinville v. Commonwealth, 381 Mass. at 250-251. Second, the clairvoyance exception would not have applied even if the trial had preceded the Herring decision. Unlike decisions such as In re Winship, 397 U.S. 358 (1970), Mullaney, and Sandstrom, the Herring decision did not require changes in accepted and widely utilized practices. Although the right of closing argument had not previously been enunciated by the Supreme Court, there was a substantial consensus among the courts that had considered the question that closing argument was a matter of constitutional right in jury trials and, with more attenuated support, in jury-waived trials also.[21] It probably would occur to most lawyers unfamiliar with Herring that the foreclosing of

---

[20] As discussed later in the opinion, however, the fact that an error is of constitutional dimension may be indicative of a relatively serious error, and the seriousness of the error and the probable prejudice stemming from it are factors which are taken into account in applying the Freeman exception.

[21] The Herring decision stated, at 859: "But the overwhelming weight of authority, in both federal and state courts, holds that a total denial of the opportunity for final argument in a nonjury criminal trial is a denial of the basic right of the accused to make his defense."

so traditional an element of the common law trial as summations might give rise to a constitutional question. Thus, the *Herring* decision cannot be thought unexpectable, except, perhaps, for the degree of enthusiasm with which the court emphasized the importance of closing arguments in bench trials.

In our view the ineffective assistance of counsel exception also does not apply in this case. A survey of out-of-State decisions, both pre-*Herring* and post-*Herring,* indicates that the trial judge's remarks would be treated by most courts as irremediable, requiring a mistrial had one been sought. If the conclusion is correct, it follows that the failure to object amounted, in the words of *Saferian* (at 96), to the waiver of an "available, substantial ground of defence." But that is only half of the *Saferian* test. Measuring counsel's omission against what "might be expected from an ordinary, fallible lawyer," we cannot reasonably discern ineffective assistance for two reasons. First, however familiar the *Herring* and related cases may be in some other jurisdictions, the question of the right to closing argument in a bench trial has not been discussed in Massachusetts decisions. It is not now, and was not at the time of the trial, familiar law. The *Saferian* standard does not hold counsel to be knowledgeable on every newly reported decision. Second, even a lawyer familiar with the *Herring* case, or, more likely, sensing intuitively the possibility of reversible error in the judge's ruling, might reasonably anticipate that the probable response to an objection would be an offer of the opportunity for belated argument, with reimposition of the guilty finding and sentencing after a futile and perhaps irritating delay. In light of the doubtless widespread unfamiliarity in this jurisdiction at the time of trial with the *Herring* case and the details of its application by other courts, it would not be reasonable to fault counsel for (1) not requesting opportunity to argue to a judge who had declared his mind made up, or (2) not appreciating that the case was in a mistrial situation. Given the procedural law in effect at the time of trial, the failure to object and note an exception may have led to the apparent failure to explore the point for purposes of appeal. In none of this can

we fairly discern the "serious incompetency, inefficiency, or inattention of counsel" which, under the *Saferian* case, are essential to finding ineffective assistance of counsel.

The remaining exception, that applied in *Commonwealth* v. *Freeman, supra,* has been at once the largest and most fluidly defined source of successful new trial motions seen in the Massachusetts courts in recent years. We think it is generally accepted that at least three elements are preconditions for the application of the *Freeman* exception: First, there must be a genuine question of guilt or innocence. Where evidence of guilt is strong and one-sided, it is generally concluded that no substantial risk exists of a miscarriage of justice.[22] See *Commonwealth* v. *Rembiszewski,* 391 Mass. at 134-135; *Commonwealth* v. *Hughes,* 380 Mass. 596, 601-602 (1980). Compare *Commonwealth* v. *Rossi,* 19 Mass. App. Ct. 257, 259-260 (1985). Second, the error must be sufficiently significant in the context of the trial to make plausible an inference that the result might have been otherwise but for the error. See *Gibson* v. *Commonwealth,* 377 Mass. 539, 543 (1979) ("one [defective] sentence in charge which occupies fifty-seven pages of transcript"). Compare *Commonwealth* v. *Shelley,* 374 Mass. 466, 470 (1978). Third, it must be inferable from the record that counsel's failure to object was not simply a reasonable tactical decision. See, e.g., *Commonwealth* v. *Johnson,* 374 Mass. 453, 464-465 (1978).

Delay in raising the issue, which seems not in itself to be a bar under Mass.R.Crim.P. 30 (b),[23] may be weighed against the defendant if the Commonwealth has been prejudiced by

---

[22] For this reason the *Freeman* exception would generally not be available to a defendant prejudiced by the unobjected-to admission of highly incriminating evidence obtained in violation of Fourth Amendment protections.

[23] The rule says the motion for a new trial may be "at any time." All grounds known, or reasonably knowable, for relief under Mass.R.Crim.P. 30 must be raised in a single such motion. Grounds not so raised are deemed waived. Mass.R.Crim.P. 30 (c) (2), 378 Mass. 901 (1979). *Commonwealth* v. *Deeran,* 397 Mass. at 138-139. Compare *Commonwealth* v. *Pisa,* 384 Mass. at 367.

the delay (the Commonwealth has made no attempt to show that here) or if in the circumstances, it is reasonable to draw an inference that trial counsel thought the point not to be critical (see *Commonwealth* v. *Grace,* 381 Mass. at 760). Where counsel has not raised a critical matter at trial or on appeal, the chief victim is likely to be the defendant himself. Compare, in respect of the time factor, *Connolly* v. *Commonwealth,* 377 Mass. 527 (1979) (11 years); *DeJoinville* v. *Commonwealth,* 381 Mass. 246 (1980) (7 years); *Commonwealth* v. *Rembiszewski,* 391 Mass. 123 (1984) (13 years).

In this case we justly cannot draw an inference that counsel intended to give a perfunctory closing argument or none at all. Such evidence as we have points the other way. See note 1, *supra.* The case cannot be characterized as one in which the evidence pointed overwhelmingly to guilt. Rather, the trial was a "duel of credibility" (*Commonwealth* v. *Ferreira,* 373 Mass. 116, 127 [1977]) between two groups of prisoners, in which there was no evidence of a corroborative nature that clearly settled the issue.

It is not a case in which the the failure to object can reasonably be attributed to tactical considerations. The defendant had been found guilty simultaneously with the ruling foreclosing arguments. Counsel grumbled but presumably thought objections futile. The guilty finding was fait accompli.

The most compelling factor in convincing us that this case must be treated as falling under the *Freeman* exception is the seriousness of the error, as evaluated by the Supreme Court in the *Herring* case. That Court characterized the denial of the opportunity for final argument in a nonjury criminal trial as "a denial of the basic right of the accused to make his defense." 422 U.S. at 859. The Court held that "closing argument for the defense is a basic element of the adversary fact-finding process in a criminal trial." 422 U.S. at 858. Errors, the significance of which could not conceivably be characterized in such sweeping terms, have been held to amount to a substantial risk of a miscarriage of justice in such cases as *Commonwealth* v. *Collins,* 374 Mass. 596, 599-600 (1978), and *Commonwealth* v. *Kater,* 388 Mass. at 533-534. It is generally

accepted, as discussed earlier, that prejudice as a result of the denial of closing arguments is assumed; and that such denial never can be harmless error. As a result, we are precluded from concluding, on the basis of the trial judge's own say-so, that argument would in all likelihood have left him where it found him. Rather, having concluded that the judge's action amounted to a denial of the right, we are constrained to hold that the defendant was denied "the basic right . . . to make his defense." For us to conclude that this denial did not create a substantial likelihood of a miscarriage of justice would be, in effect, to reject the importance assigned to the right by the *Herring* decision.

Accordingly, we conclude that the denial of the defendant's motion for a new trial must be reversed and that the judgments must be reversed and findings set aside.

*So ordered.*