## COMMONWEALTH *VS.* STEPHAN COWANS.

No. 00-P-52.

Suffolk. April 17, 2001. - October 12, 2001.

Present: JACOBS, CYPHER, & GRASSO, JJ.

*Identification. Evidence,* Identification, Relevancy and materiality. *Practice, Criminal,* Instructions to jury. *Home Invasion.*

At a criminal trial, the judge did not err in permitting a police officer to testify during direct examination that he had no doubt that the defendant was the person who shot him; further, this court declined to extend *Commonwealth* v. *Santoli,* 424 Mass. 837, 845-846 (1997), to prohibit inquiry on direct examination about a witness's level of confidence in an identification. [813-814]

At the trial of an indictment for armed home invasion, G. L. c. 265, § 18C, the evidence presented warranted the jury's findings that the defendant's entry into the dwelling was unlawful [814-815], and that the defendant had threatened the imminent use of force [815-816].

At the trial of an indictment for armed home invasion, the judge's instruction to the jury, in response to the prosecutor's initial request for an instruction, that mere display of a weapon was sufficient to "trigger the threat element" of the crime, as well as the answers provided to the jury in response to the jury's questions about the elements of home invasion, created an impression that the jurors could find the element of threat of the imminent use of force without considering the defendant's intent and that display of a weapon would satisfy the element if the occupant was put in fear; consequently, a substantial risk of a miscarriage of justice was created by the instruction to the jury, where it could not be said that the verdict would not have been different if the jury had been properly instructed. [816-821]

INDICTMENTS found and returned in the Superior Court Department on July 3, 1997.

The cases were tried before *James D. McDaniel, Jr., J.*

*Stephen Paul Maidman* for the defendant.

*Rosemary Daly,* Assistant District Attorney, for the Commonwealth.

CYPHER, J. A jury convicted the defendant, Stephan Cowans, of armed assault with intent to murder, home invasion, assault and battery by means of a dangerous weapon, armed robbery, assault and battery on a police officer,[1] assault by means of a dangerous weapon, and unlawful possession of a firearm. The defendant asks us to hold that witnesses may not testify on direct examination to their degree of certainty in an identification. The defendant also alleges that there was insufficient evidence to support a guilty verdict on the charge of home invasion and that the jury instructions on that charge were in error. We affirm in part and reverse in part.

1. *Factual background.* The jury could have found the following facts. After pursuing a male, later identified as the defendant, on foot, Boston police Officer Gregory Gallagher caught up to him in a backyard in the Jamaica Plain section of Boston. The defendant grabbed Gallagher and the two struggled until the defendant managed to remove Gallagher's gun from its holster. As Gallagher scaled a fence, the defendant shot him twice. Gallagher survived and heard additional shots. The defendant had shot at a neighborhood resident, Benjamin Pitre, but missed.

At the same time, while in the kitchen of her home, Bonnie Lacy and her daughter heard gun shots. Lacy's son came downstairs and opened the side door of the house. The defendant, whom Bonnie Lacy had never seen before, was standing in the doorway with a gun. She testified that the man "just came on in . . . [h]e just walked, just like normal walking, with a gun." The gun's barrel was pointing up. The defendant appeared frightened and nervous. Lacy was very frightened.

Lacy asked him what the problem was and he replied, "[T]hose punks are after me." She asked who and he told her "those white policemen." Lacy asked the defendant to put down the gun. He complied. He kneeled on the floor and took off his sweatshirt. The defendant used his sweatshirt to wipe the gun and rested the gun on top of the sweatshirt on the floor.

The defendant asked for some water and Lacy provided him

---

[1]The conviction of assault and battery on a police officer was placed on file with the defendant's consent and is not before us. See *Commonwealth* v. *Mahar*, 430 Mass. 643, 644 n.1 (2000).

with a glass mug of water. He drank the water and placed the mug on her kitchen table. Lacy went to the door and asked him if he was ready to go. The defendant told her he did not want to go to jail. Lacy told him that if he had done anything wrong he should just go and turn himself in. Lacy opened the door and the defendant went out.

The defendant left behind the gun and the sweatshirt. Lacy testified that after the defendant left, she and her children "hugged each other real, real tight; and we praised God that we didn't get killed." Lacy testified that the defendant never pointed the gun at her or her children and he never threatened them with the gun.

Tennille Davis, a friend of the defendant's, testified that she saw him before and after the shooting. The defendant repeatedly suggested to Davis that he had been with her the entire day of the shooting. She testified that she corrected him and said she had seen him early that day and then again after the officer was shot, but that she had not been with him the entire day.

Several weeks later, Gallagher selected the defendant's photograph from an array and then identified the defendant in a lineup. At trial, Gallagher identified the defendant as the man who shot him. Pitre viewed a photographic array, but did not identify anyone, even though the defendant's photograph was in the array. Pitre subsequently selected the defendant from a lineup and identified him at trial. Bonnie Lacy viewed a photographic array and the lineup but did not positively identify anyone. A fingerprint left on the glass mug was matched to the defendant.

The theory of the defense was misidentification. A woman in the neighborhood had seen a black male being chased by a police officer, but she testified that it was not the defendant. Defense counsel also introduced evidence that the Lacy children had not selected anyone from the photographic array and challenged the eyewitness and fingerprint evidence.

2. *Officer Gallagher's certainty that the defendant was his assailant.* During direct examination, Officer Gallagher testified, over objection, that he had no doubt that the defendant was the person who shot him. The defendant asks us to conclude that this was error and to extend *Commonwealth v. Santoli*, 424

Mass. 837, 845-846 (1997), to prohibit testimony during direct examination concerning the degree of certainty of a witness in an identification. In *Santoli*, the Supreme Judicial Court concluded that juries should no longer be instructed with regard to "the significance, if any, of a witness's confidence in an identification." *Id.* at 846. Before the decision in *Santoli*, the commonly used instruction on identification stated that the jurors could consider witness confidence in the identification. *Id.* at 845. We have previously stated that *Santoli* does not prohibit counsel from probing the subject of a witness's degree of certainty or arguing it to the jury. *Commonwealth* v. *Drane*, 47 Mass. App. Ct. 913, 914 (1999).

In support of his argument, the defendant relies on the premise that jurors are more likely to believe a confident eyewitness and on studies which suggest that there is no correlation between certainty and accuracy in identification evidence. Regardless of whether there is any merit to this point, the defendant's argument overlooks the basic rule that relevant evidence is admissible. Liacos, Massachusetts Evidence § 4.1.2, at 109-111 (7th ed. 1999).

The relevancy, as well as the weight, of a witness's level of confidence in an identification will vary from case to case, depending on a multitude of factors. The significance that should be given to the level of confidence exhibited by a witness is, as the Supreme Judicial Court concluded in *Santoli*, for the jury to determine, not the court. Counsel is free to argue that the testimony of any witness should or should not be credited. Furthermore, the rule advocated by the defendant would preclude expressions of *uncertainty* as well.

The judge did not err in permitting Gallagher to testify to his level of confidence in his identification of the defendant. We decline to extend *Santoli* to prohibit inquiry on direct examination about a witness's level of confidence in an identification.

3. *Sufficiency of the evidence on the charge of home invasion.* The crime of armed home invasion has four elements: that the defendant "(1) 'knowingly enter[ed] the dwelling place of another'; (2) 'knowing or having reason to know that one or more persons are present within' (or entered without such

knowledge but then remained in the dwelling place after acquiring or having reason to acquire such knowledge); (3) 'while armed with a dangerous weapon'; and (4) 'use[d] force or threaten[ed] the imminent use of force upon any person within such dwelling place whether or not injury occur[red], or intentionally cause[d] any injury to any person within such dwelling place.' " *Commonwealth v. Doucette*, 430 Mass. 461, 465-466 (1999), quoting from G. L. c. 265, § 18C. *Commonwealth v. Dunn*, 43 Mass. App. Ct. 58, 59-62 (1997). The defendant claims that the judge should have allowed his motion for a required finding of not guilty because the evidence was insufficient on the elements of unlawful entry and force or threatened imminent use of force.

a. *Unlawful entry.* The defendant argues that there was no unlawful entry because Lacy's son consented to the entry by opening the door. We do not find this argument persuasive. First, there is nothing in the record to suggest that Lacy's son knew that the defendant was standing outside the door desiring entry. Second, Lacy testified that the defendant "just came on in," suggesting that he was not invited. Third, even if the child willingly opened the door to admit the defendant, the element of unlawful entry would still be satisfied because "purported consent [in the context of a violation of G. L. c. 265, § 18C,] cannot be considered legally significant unless the occupant has been made aware that the person at the door is armed with a dangerous weapon and is about to commit an assault once inside." *Commonwealth v. Mahar*, 430 Mass. 643, 652-653 (2000). When the evidence is viewed in the light most favorable to the Commonwealth, a rational trier of fact could have concluded that the defendant's entry was unlawful.

b. *Force or threat of imminent force.* The defendant claims that the evidence was insufficient for the jury to find that he used force or threatened the imminent use of force upon the Lacys because he entered the opened door with the gun barrel pointed up, did not verbally threaten anyone with the gun or point the gun at anyone, and, when Lacy asked him to put the gun down, he complied. Although the defendant did not apply physical force to the Lacys, a jury could have found that his conduct amounted to constructive force or to a threat of the

imminent use of force. Compare *Commonwealth* v. *Novicki*, 324 Mass. 461, 467 (1949) ("Actual force is applied to the body, constructive [force] is by threatening words or gestures, and operates on the mind").[2]

Threat of the imminent use of force has been likened to common law criminal assault.[3] *Commonwealth* v. *Dunn*, 43 Mass. App. Ct. at 62. See *Commonwealth* v. *Mahar*, 430 Mass. at 651 (in home invasion the "gist of the entry element is to make an entry unlawful if the armed person has no right to enter the dwelling, possesses the requisite knowledge [of the presence of one or more persons inside], and commits an assault, or intentionally causes injury").

The defendant's conduct in entering the Lacy home while holding a gun, pointed up, was objectively menacing and could reasonably be understood as intended to put Lacy and her children in fear of immediate harm. From this objectively menacing conduct, viewed in the light most favorable to the Commonwealth, a jury could have concluded that the defendant had threatened the imminent use of force.

4. *The jury instructions on home invasion.* The defendant claims that the jury instruction on the fourth element of home invasion (force or the threatened imminent use of force) incorrectly stated the law and removed the element of intent from the consideration of the jury, thereby creating a substantial risk of a miscarriage of justice.[4] At the conclusion of the jury instructions the prosecutor asked the judge to instruct the jury that

---

[2]We may turn to similar statutes to construe the meaning of words. See *Commonwealth* v. *Brown*, 431 Mass. 772, 775 n.8 (2000).

[3]Common law criminal assault may be committed by an attempted battery or by putting another in fear of an immediately threatened battery. *Commonwealth* v. *Gorassi*, 432 Mass. 244, 247 (2000). "In the case of an attempted battery type of assault, although the Commonwealth must prove that the defendant attempted to do bodily harm, there is no requirement that the victim be aware of the attempt or be put in fear by it. . . . In the case of a threatened battery type of assault, the Commonwealth must prove that the defendant engaged in 'objectively menacing' conduct with the intent to put the victim in fear of immediate bodily harm." (Citations omitted.) *Id.* at 248. See *Commonwealth* v. *Musgrave*, 38 Mass. App. Ct. 519, 524 n.7 (1995), *S.C.*, 421 Mass. 610 (1996).

[4]The initial instruction substantially conformed to the charge on home invasion set forth in 1 Massachusetts Superior Court Criminal Practice Jury Instructions § 2.31 (1999).

"the mere display of a weapon is enough to trigger the threat element of home invasion."

In response to the prosecutor's request the judge told the jury:

> "When I was defining home invasion, I was talking about threats and so forth. The mere entry of a house with a weapon in hand is sufficient to trigger the assault aspect of it. The weapon doesn't have to be brandished or waived at anybody. A person coming into a home with a weapon, that constitutes an assault. That is sufficient evidence to constitute an assault. If you find that a person came into the house with a weapon, that is sufficient to constitute an assault."

After beginning deliberations, the jury asked to be re-instructed on the elements of home invasion. The judge repeated the original charge and added:

> "I told you about if a person enters a dwelling house with a weapon. If a person enters a dwelling house with a weapon, he doesn't have to brandish the weapon around or point it at anybody. If a person enters a dwelling house with a weapon and the person in that dwelling house sees the weapon and apprehends fear from that or reasonably could apprehend fear from that, that constitutes that element of the crime. He doesn't have to wave it around and say, get your hands up, I'm going to shoot you, or anything like that. If a person comes in with any kind of weapon, a knife or a gun, and the person seeing that apprehends any fear may come from that, that makes out that particular element, that is, the assault could consist of putting a person in fear by the defendant displaying a weapon and a person's apprehending the danger, even if the defendant did not intend to shoot or stab or whatever he was doing at the time and did not have the ability to do so."

The jury continued deliberating. On the second day of deliberations, the jury asked a question about assault with intent to murder and asked for "another outline of the four points of home invasion, in particular, the fourth point involving the use of force versus the threat of force." Again, the judge instructed the jury on the elements of home invasion. With regard to the last element, the judge continued:

"Now, with force or use of force. I told you, if the Commonwealth proves beyond a reasonable doubt that the defendant entered the dwelling house with a weapon, a firearm, in this case, if the Commonwealth proves that beyond a reasonable doubt and it proves that somebody was put in fear in the house because the person came in with a weapon, that satisfies the issue of threat.

"I said to you the Commonwealth doesn't have to prove the person picked it up and pointed it at anybody or did anything else with it. The threat may be inferred, if you will, if you reach that point, it may be inferred when the person is in there with a dangerous weapon. Now, you have to look to all of the evidence that was in the case to determine what the state of mind was of the people that were in that house at the time, if you conclude the defendant entered the house, as I have already said.

"That is what is meant by threat or the use of force versus the threat of force. Use of force, get out of the way; threat of force, with the weapon there and you apprehending danger. Don't have to do anything. You have to consider all of the facts and circumstances that were developed during the course of the trial. If the government proves each of those four essential elements, then the government has made out the crime of home invasion."

The instruction provided to the jury in response to the prosecutor's initial request for an instruction that mere display of the weapon was sufficient to "trigger the threat element," as well as the answers provided to the jury in response to their questions about the elements of home invasion, created an impression that the jurors could find the element of threat of the imminent use of force without considering the defendant's intent and that display of a weapon would satisfy the elements if the occupant was put in fear. In response to the deficiency in the charge on intent, the Commonwealth argues that the elements of the home invasion statute were stated with reasonable clarity in the instruction and that because the Legislature made no reference to "assault" but instead used the terms "force" and "threatens the imminent use of force," we should not read an

intent element into the statute.[5] As noted earlier, our courts have likened the element of threat of the imminent use of force to common law criminal assault, see *Commonwealth* v. *Mahar*, 430 Mass. at 651; *Commonwealth* v. *Dunn*, 43 Mass. App. Ct. at 62, and have concluded that "[i]n the case of a threatened battery type of assault, the Commonwealth must prove that the defendant engaged in 'objectively menacing' conduct with the intent to put the victim in fear of immediate bodily harm." *Commonwealth* v. *Gorassi*, 432 Mass. 244, 248 (2000). See *Commonwealth* v. *Spencer*, 40 Mass. App. Ct. 919, 922 (1996). See also LaFave & Scott, Criminal Law § 7.16(b) (1986). The defendant's intent was, therefore, an issue for the jury to determine, and the jury should have been instructed to that effect. We consider whether this error in the instruction created a substantial risk of a miscarriage of justice.

In evaluating whether an error created a substantial risk of a miscarriage of justice, we determine whether the error "materi-

---

[5]The Commonwealth correctly notes that the statute does not contain the express requirement that the defendant intend to place the victim in fear or apprehension of fear. There is an absence of legislative history with regard to the interpretation of this element of the home invasion statute. In the absence of legislative history, we may turn to principles of statutory construction for assistance in interpretation. Application of such principles favors a conclusion that the element of threat of the imminent use of force in this statute requires that the Commonwealth prove the defendant intended to place the victim in fear. First, an ambiguity in a criminal statute is construed in favor of the defendant. *Commonwealth* v. *Ruiz*, 426 Mass. 391, 394 (1998). Second, the language used in the home invasion statute approximates the common law definition of the crime of assault. We may presume the Legislature was aware of this, and so draw on the common law interpretation of the language. Cf. *Commonwealth* v. *Matsos*, 421 Mass. 391, 394 (1995) (where language in statute prohibiting stalking, G. L. c. 265, § 43, closely approximated common law criminal assault, court presumed that Legislature was aware of similarity). Third, as already noted, where there is a threat to do harm (threat of the imminent use of force), there is an assault. *Salemme* v. *Commonwealth*, 370 Mass. 421, 424 (1976), citing *Commonwealth* v. *Slaney*, 345 Mass. 135, 138 (1962). Finally, were we to interpret threat of the imminent use of force as not equating to an immediately threatened battery, but rather, a threat to commit a crime, the Commonwealth would be required to prove that the defendant intended to apply force and had the ability to do so. See *Commonwealth* v. *Chalifoux*, 362 Mass. 811, 816 (1973); *Commonwealth* v. *Ditsch*, 19 Mass. App. Ct. 1005 (1985). Such an interpretation would be inconsistent with *Commonwealth* v. *Dunn*, in which the court noted that there was no requirement that the defendant actually intend to harm the occupant. 43 Mass. App. Ct. at 62.

ally influenced" the guilty verdict. *Commonwealth* v. *Alphas*, 430 Mass. 8, 13 (1999). After turning for assistance in making this evaluation to the criteria set forth in *Commonwealth* v. *Miranda*, 22 Mass. App. Ct. 10 (1986), we conclude that there was a substantial risk of a miscarriage of justice.

Although the case establishing that the defendant was the gunman was strong, the nature of the error was significant. *Id.* at 21. When an error "pertains to the definition given to the jury of the crime charged, the possibility of a substantial risk of a miscarriage of justice is inherent." *Commonwealth* v. *Hall*, 48 Mass. App. Ct. 727, 730 (2000), citing *Commonwealth* v. *Glenn*, 23 Mass. App. Ct. 440, 444-445 (1987).

The Commonwealth argues that because the theory of defense was identity and the elements of home invasion were not a live issue, there was no substantial risk of a miscarriage of justice. In fact, defense counsel specifically emphasized in his opening statement that he was not challenging whether the crimes occurred but only whether the defendant was the person who committed the crimes. Throughout the trial defense counsel kept to this theme. In closing argument he stated:

> "There's a lot of crimes that my client is charged with in these proceedings. And, you see, up to now, I haven't even talked about the substance of those criminal activities. And the reason why I haven't talked about the substance of those criminal activities is because he didn't do it. This case hinges on identity, plain and simple."

In somewhat analogous circumstances, there are numerous cases in which the court has held that an error in the jury instructions on malice did not create a substantial risk (or a substantial likelihood, in first degree murder convictions) of a miscarriage of justice where the only contested issue was the identity of the killer or assailant. See, e.g., *Commonwealth* v. *Lee*, 383 Mass. 507, 508, 512-513 (1981); *Commonwealth* v. *Puleio*, 394 Mass. 101, 102, 109 (1985); *Commonwealth* v. *Shea*, 398 Mass. 264, 269-270 (1986); *Commonwealth* v. *Gagnon*, 430 Mass. 348, 350 (1999).

What prevents this case from following this line of precedent, however, is that here the jury grappled with the elements of home invasion, and particularly with the element of force or the

threat of imminent force. Cf. *Commonwealth* v. *Skinner*, 408 Mass. 88, 97-98 (1990) (where, although the pivotal issue was malice, the jury asked a highly focused question regarding the element of premeditation, the supplemental instruction was incorrect, and the defendant did not concede the issue of premeditation, error not harmless).

Furthermore, a finding that the defendant was the gunman would not necessarily mean that the elements of the home invasion statute had been satisfied. In contrast, in the cases in which the court concluded that an erroneous instruction on the element of malice did not create a substantial risk (or likelihood) of a miscarriage of justice because identity was the only live issue at trial, the nature of the killings or assaults compelled an inference of malice. See, e.g., *Commonwealth* v. *Lee*, 383 Mass. at 508, 512-513 (shooting); *Commonwealth* v. *Puleio*, 394 Mass. at 102, 109 (same); *Commonwealth* v. *Gabbidon*, 398 Mass. 1, 4-5 (1986) (same); *Commonwealth* v. *Shea*, 398 Mass. at 269-270 (stabbing); *Commonwealth* v. *Gagnon*, 430 Mass. at 350 (shooting); *Commonwealth* v. *Medina*, 430 Mass. 800, 801, 808 (2000) (beating with baseball bat).

The supplemental instructions removed an essential element of the crime from the jury's consideration. "[A] defendant's theory of his case cannot relieve the Commonwealth of its burden of proving every element of a crime beyond a reasonable doubt." *Commonwealth* v. *Shea*, 398 Mass. at 269. In the circumstances of this case, even though counsel's failure to object was a tactical choice based on the defense strategy of focusing on identity, we cannot say that the verdict would not have been different if the jury had been properly instructed. *Commonwealth* v. *Miranda*, 22 Mass. App. Ct. at 21.

We note for the future that when instructing the jury on the elements of the home invasion statute, with regard to the threatened imminent use of force, the judge should instruct in accordance with the elements of an immediately threatened battery, i.e., that the jury must determine whether the defendant intended to cause the victim fear or apprehension of immediate harm. See *Commonwealth* v. *Musgrave*, 38 Mass. App. Ct. 519, 522-524 (1995), *S.C.*, 421 Mass. 610 (1996); *Commonwealth* v. *Kushner*, 43 Mass. App. Ct. 918 (1997). Whether the occupant

was actually in fear or apprehended harm may be considered by the jury in determining whether the defendant threatened the imminent use of force, but it is not required, and it is possible that, standing alone, it would not be sufficient to prove a threat of the imminent use of force.

5. *Conclusion.* The judgments on the charges of armed assault with intent to murder, assault and battery by means of a dangerous weapon, armed robbery, assault by means of a dangerous weapon, and unlawful possession of a firearm are affirmed. The judgment on the charge of home invasion is reversed and the verdict is set aside.

*So ordered.*