NOTICE: Summary decisions issued by the Appeals Court pursuant to M.A.C. Rule 23.0, as appearing in 97 Mass. App. Ct. 1017 (2020) (formerly known as rule 1:28, as amended by 73 Mass. App. Ct. 1001 [2009]), are primarily directed to the parties and, therefore, may not fully address the facts of the case or the panel's decisional rationale. Moreover, such decisions are not circulated to the entire court and, therefore, represent only the views of the panel that decided the case. A summary decision pursuant to rule 23.0 or rule 1:28 issued after February 25, 2008, may be cited for its persuasive value but, because of the limitations noted above, not as binding precedent. See Chace v. Curran, 71 Mass. App. Ct. 258, 260 n.4 (2008).

COMMONWEALTH OF MASSACHUSETTS

APPEALS COURT

24-P-467

COMMONWEALTH

vs.

KEVIN M. BOUTET, JR.

MEMORANDUM AND ORDER PURSUANT TO RULE 23.0

Following a bench trial in the District Court, the defendant, Kevin M. Boutet, Jr., was convicted of violating an abuse prevention order. He argues on appeal that the judge erred in conducting the trial and suppression hearing simultaneously, admitting evidence at trial that he had received Miranda warnings, and denying his motion for a required finding of not guilty. We affirm.

Background. On the evening of April 19, 2023, Tewksbury police and fire department personnel responded to room 119 at the Motel 6 regarding a potential overdose and suicide attempt. There, various police officers observed and spoke with the defendant who appeared "confused," but conscious, alert, and

responsive to questions.  Officer Matthew O'Brien noticed a half-empty bottle of melatonin on the nightstand, and the defendant told him that he "took his regular dose."  Emergency medical services personnel on the scene indicated that the defendant's blood pressure was "high" and "that he didn't seem to be actively overdosing, but . . . he should be evaluated."

"At some point," the defendant's mother and sister arrived at the scene and spoke with Officer O'Brien.  The mother stated that she came to the motel because the defendant's ex-girlfriend (the plaintiff on the restraining order) had sent her screenshots of text messages from the defendant in which he indicated, inter alia, that "he was taking a bottle of melatonin, [and] a bottle of Tylenol in an effort to kill himself."[1]  Officer O'Brien believed that "there was serious risk of harm" to the defendant, and that the defendant "wanted to kill himself."  Based on all of these circumstances, the defendant was taken into protective custody for suspected drug intake, put on a stretcher, and placed into an ambulance for evaluation pursuant to G. L. c. 123, § 12.

While the defendant was inside the ambulance, Officer O'Brien learned that the defendant's ex-girlfriend -- to whom

---

[1] The screenshots were admitted in evidence as an exhibit at trial.  They included a text purportedly from the defendant that read, in part, "See you on the other side[.]"

2

the defendant had sent text messages -- had an active abuse prevention order against the defendant, which included a "no contact" provision.  Officer O'Brien then provided Miranda warnings to the defendant.[2]  The defendant indicated that he wished to speak to an attorney before speaking further with Officer O'Brien.  Accordingly, Officer O'Brien left the ambulance to allow him to do so.  Officer Dylan Cuccio, however, remained inside the ambulance, and observed the defendant unlock his cell phone, open the "messages section," and "hold something down and slide it, and then the top box for the text messages just disappeared."  "It appeared that [the defendant] had deleted some sort of messages."  Officer Cuccio further observed the defendant "scroll down on his phone," but the defendant "never attempted to make a phone call."

Approximately four to five minutes after leaving the ambulance, Officer O'Brien returned, arrested the defendant for violating the abuse prevention order, seized his cell phone, and handcuffed him to the stretcher.  The defendant was transported to the hospital and taken to a private room in the emergency department, accompanied by Officer Cuccio.  Officer Cuccio did not ask the defendant any questions.  At some point, the

---

[2] The printed card from which Officer O'Brien read the defendant his Miranda rights was admitted as an exhibit at trial.

3

defendant asked how he could "get his phone back," and stated that he wanted to provide the police "access to the phone so that he could get it back." Officer Cuccio told the defendant that he was "not obliged to talk to [Officer Cuccio] about the case," and the defendant responded that he "just wanted to be honest and truthful and to get his phone back." The defendant next made various statements to Officer Cuccio, including an admission that he had "texted" his ex-girlfriend.

At approximately 12:30 A.M., the defendant was discharged from the hospital and transported to the Tewksbury Police Department. During the booking process, Sergeant Michael Newcomb provided Miranda warnings to the defendant. In addition, Officer Cuccio informed Officer O'Brien of the defendant's earlier statement at the hospital that he "wished to give consent for [the officers] to examine his cell phone." Officer O'Brien asked the defendant for consent to search the cell phone, provided the defendant with a consent form, and read it to him. The defendant "filled out [the] form," and signed it.[3] During the booking process, the defendant was observed to be "very cooperative," coherent, responsive, and was not "overly emotional" or "slurring his words." Officer O'Brien then

---

[3] The consent form was introduced at trial and marked as an exhibit.

reviewed the text messages, which, among other things, referenced a gun.  Asked about the gun, the defendant stated that "he was only saying that to elicit a reaction" from his ex-girlfriend.  He also stated to Sergeant Newcomb that "he did send text messages to . . . [his ex-girlfriend]," and that he "lied about trying to kill himself."

Discussion.  The defendant's first and primary argument is that the judge erred in combining the bench trial with the hearing on the motion to suppress.  He contends that the "overlapping, intertwined proceedings flagrantly violated" precedent holding that such proceedings should not be combined, and that doing so compromised the judge's ability to apply rules of evidence, apply burdens of proof, and evaluate the facts and apply the law under differing legal standards.  Where the defendant not only did not object to the procedure, but requested it, our review is limited to whether there was any error, and if so, whether that error created a substantial risk of a miscarriage of justice.  See Commonwealth v. Alphas, 430 Mass. 8, 13 (1999).

We agree that the judge erred in combining the trial and motion hearing, and that this practice should be eliminated. See Commonwealth v. Healy, 452 Mass. 510, 516 (2008) (discouraging District Court practice of consolidating bench

trials with suppression hearings and stating that "the practice should be eliminated").  Thus, we look to see whether the error was so prejudicial as to create a substantial risk of a miscarriage of justice.  See id. at 514 (concluding that preserved error stemming from combining bench trial and motion to suppress was harmless beyond a reasonable doubt).  Here, we discern no such risk for various reasons.

First, as mentioned above, the defendant requested the joint proceeding and had a strategic reason for doing so.[4] Second, prior to allowing the request to combine the proceedings, the judge conducted a thorough colloquy with the defendant explaining the process.  The judge also allowed trial counsel to speak with the defendant and further explain the process and evidentiary issues in "layman's terms" before proceeding.  Third, despite the purported confusion created by the joint proceedings -- detailed in comprehensive fashion by the defendant in his appellate brief -- the transcript reflects that the judge repeatedly and deftly parsed and distinguished trial evidence and procedures from suppression evidence and

---

[4] Trial counsel for the defendant explained to the judge that the defendant had been arraigned on a new case one week earlier and held without bail, and thus bail was revoked in the present case.  Thus, it benefited the defendant to resolve the present case forthwith, and then challenge his pretrial detention, while still preserving additional rights via a motion to suppress.

procedures.  Finally, we presume that the judge correctly instructed himself on the law, and there is nothing in the present record that suggests he did not do so.  See Commonwealth v. Watkins, 63 Mass. App. Ct. 69, 75 (2005) ("judges in jury-waived trials are presumed to know and correctly apply the law").  Accordingly, the defendant's claim is unavailing.

The defendant next argues that evidence of his receipt of Miranda warnings was improperly admitted at trial.  Here again, there was no objection at trial to the admission of such evidence and review is limited to whether there was any error, and if so, whether that error created a substantial risk of a miscarriage of justice.  See Alphas, 430 Mass. at 13.

"[W]here the voluntariness of a statement is a live issue at trial, the jury may hear evidence that a defendant was informed of and understood his Miranda rights."  Commonwealth v. Toolan, 460 Mass. 452, 471 (2011).  In the present case, the defendant asserts that the "sole issue" at trial was the voluntariness of his statements to the police.  Thus, evidence that a defendant was informed of and understood his Miranda rights was relevant and admissible.  Id. at 472 (Commonwealth was entitled to present evidence defendant was informed of

Miranda rights where defendant challenged voluntariness of statements made in custody).  There was no error.[5]

The defendant also argues that the Commonwealth presented insufficient evidence to prove a violation of the abuse prevention order because there was no evidence that he was the person who sent the text messages to his ex-girlfriend.  We apply the familiar test to determine "whether, after viewing the evidence in the light most favorable to the [Commonwealth], any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt" (emphasis omitted).  Commonwealth v. Latimore, 378 Mass. 671, 677 (1979), quoting Jackson v. Virginia, 443 U.S. 307, 319 (1979).  "If, from the evidence, conflicting inferences are possible, it is for the jury to determine where the truth lies, for the weight and

_____

[5] The defendant also claims that the judge erred in allowing evidence that after being given Miranda warnings, the defendant invoked his right to counsel.  The defendant did not object to the admission of this evidence.  We discern no error, much less a substantial risk of a miscarriage of justice, where the prosecutor did not use the defendant's invocation of his right to counsel as evidence of his guilt or refer to the invocation in his closing argument.  See Commonwealth v. Martinez, 431 Mass. 168, 183-184 (2000) (testimony that defendant invoked right to counsel permissible to explain abrupt end of interview, so long as not used as evidence of defendant's guilt).  Furthermore, the evidence that the defendant violated the abuse prevention order was strong and corroborated in myriad ways.  See Commonwealth v. Miranda, 22 Mass. App. Ct. 10, 21 (1986) ("Where evidence of guilt is strong and one-sided, it is generally concluded that no substantial risk exists of a miscarriage of justice").

credibility of the evidence is wholly within their province."
Commonwealth v. Lao, 443 Mass. 770, 779 (2005).  See
Commonwealth v. Nelson, 370 Mass. 192, 203 (1976) (evidence need
not require jury to draw inference; sufficient that evidence
permits inference to be drawn).

Here, the defendant made multiple admissions to the effect
that he had sent the text messages to his ex-girlfriend.  Those
text messages included a reference to the ex-girlfriend by her
first name and provided additional corroborating circumstances
regarding the putative overdosing incident that prompted law
enforcement to engage with the defendant.  The content of the
screenshots of the text messages and the abuse prevention order[6]
provided further "confirming circumstances" to demonstrate that
the ex-girlfriend who reported the defendant's condition to the
defendant's mother, was the person named in the abuse prevention
order and recipient of the text messages from the defendant.
Commonwealth v. Lopez, 485 Mass. 471, 478 (2020).  Therefore,

---

[6] A copy of the abuse prevention order was admitted as an exhibit at trial.  As noted above, screenshots of the text messages were also admitted as an exhibit at trial.  See note 1, supra.

9

the evidence at trial was more than sufficient to survive a motion for a required finding of not guilty.

Judgment affirmed.

By the Court (Massing,
Neyman & Wood, JJ.[7]),

*Paul Little*

Clerk

Entered:  June 9, 2025.

---

[7] The panelists are listed in order of seniority.